712 A.2d 573

**Kevin Darnell DYSON**

v.

**STATE of Maryland.**

**No. 1527, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

June 30, 1998.

Antonio M. Jones (Gibson, Jones & Offley, L.L.P., on the brief), Riverdale, for appellant.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Walter B. Dorsey, State's Atty. for St. Mary's County, Leonardtown, on the brief), for appellee.

Submitted before MURPHY, C.J., MOYLAN, J., and JOHN J. BISHOP, Jr., Judge (retired), Specially Assigned.

MOYLAN, Judge.

In a non-jury trial in the Circuit Court for St. Mary's County, the appellant, Kevin Darnell Dyson, was convicted of conspiracy to possess cocaine with intent to distribute. On this appeal, he raises the two contentions

1. that the trial court erroneously denied his motion to dismiss the indictment because of the State's failure to bring him to trial within 180 days; and

2. that the trial court erroneously denied his motion to suppress the physical evidence.

### *The Forfeiture of the Right to Complain*

■ We see no merit in the appellant's first contention. Following his indictment on July 29, 1996, the appellant first appeared before the court for arraignment on September 6. That was the day, therefore, on which the 180–day clock of Maryland Rule 4–271 began to tick. Pursuant to the Rule, the appellant was entitled to a trial on or before March 4, 1997. Trial was initially set for January 7. On January 3, the State moved for a postponement of the trial date and that motion was granted. The trial was subsequently set for April 15. That January 3 postponement, therefore, turned out to be the critical postponement that caused the trial to be held beyond the 180–day deadline.

The appellant's present complaint that the 180–day rule was violated because of the failure of the court to conduct a "good cause" hearing before the administrative judge, however, is quite beside the point. Even assuming a violation of Rule 4–271 and Article 27, § 591, the appellant, himself a party to the violation, may not exploit it.

■ The appellant overlooks two closely related and very fundamental principles. When an attorney represents a client in the trial of a lawsuit, the attorney 1) is not a party to the lawsuit and 2) is not a stranger to his client, notwithstanding a discernible tendency of defendants to distance themselves from defense counsel whenever a trial goes badly. The attorney is the agent of the client. With limited exceptions not here pertinent, the defense attorney, therefore, is authorized by basic principles of agency to make decisions for a defendant that are binding on the defendant.

■ When the State, in January of 1997, sought a postponement of the January 7 trial date in order to obtain a transcript of testimony taken at a motions hearing on December 30, 1996, counsel for the appellant expressly stated that he had no objection to such a postponement. There was still, to be sure,

ample time within which to reschedule the trial before the March 4 deadline. It was defense counsel, however, who indicated that he would be out of the state for the entire month of February. A scheduling accommodation for the benefit of defense counsel is presumptively an aspect of the total defense interest and not something antithetical to it. On behalf of the appellant, therefore, there was filed, through his attorney, a "Waiver of the 180–Day Rule." The appellant, with ill grace, now seeks to repudiate that action taken by his agent on his behalf. He may not do so.

In *State v. Brown,* 307 Md. 651, 658, 516 A.2d 965 (1986), the Court of Appeals, through Judge Eldridge, flatly characterized the sanction of dismissal as inappropriate when a defendant, directly or through counsel, has consented to such postponement:

> Finally, even when a circuit court criminal case has been postponed beyond the 180–day time limit in violation of § 591 and Rule 746, *the sanction of dismissal is inapplicable "where the defendant, either individually or by his attorney, seeks or expressly consents to a trial date in violation of Rule 746." State v. Hicks, supra,* 285 Md. [310] at 335, 403 A.2d 356 [1979]. *See Pennington v. State, supra,* 299 Md. [23] at 28–29, 472 A.2d 447 [1984]; *State v. Frazier, supra,* 298 Md. [422] at 447 n. 17, 470 A.2d 1269 [1984]; *Goins v. State, supra,* 293 Md. [97] at 108, 442 A.2d 550 [1982]. This is not because the defendant, by his action or consent, has "waived" the requirements of § 591 and Rule 746, so that the requirements are inapplicable. Rather, it is because *"[i]t would ... be entirely inappropriate for the defendant to gain advantage from a violation of the rule when he was a party to that violation." State v. Hicks, supra,* 285 Md. at 335, 403 A.2d 356.

(Emphasis supplied).

As recently as *Jackson v. State,* 120 Md.App. 113, 136–37, 706 A.2d 156 (1998), Judge Eyler for this Court referred to the inappropriateness of the dismissal sanction when the defendant has consented to the violation of the Rule:

Under *Hicks* and its progeny, when a trial date is postponed beyond the 180 day period, without a finding of the requisite cause by the administrative judge or his or her designee, dismissal is mandatory *unless* the defendant seeks or expressly consents to a trial date in violation of the rule. *State v. Parker,* 347 Md. 533, 537–38, 702 A.2d 217 (1995); *Goins,* 293 Md. at 107–08, 442 A.2d 550; *Franklin [v. State],* 114 Md.App. [530] at 534, 691 A.2d 257 [1997].

(Emphasis in original).

■ The actions of counsel in this regard, moreover, are binding on a defendant and are not sapped of vitality simply because the defendant has not directly or personally participated in the decision-making process. In *Woodlock v. State,* 99 Md.App. 728, 738, 639 A.2d 188 (1994), Judge Getty observed for this Court:

*Where counsel,* being aware of the Rule, *consents to a trial date beyond the limitations set by the Rule, dismissal would be an inappropriate sanction for non-compliance.*

(Emphasis supplied).

■ In criminal cases, defense counsel 1) are presumed to know the law; 2) are empowered, with exceptions not here pertinent, to act on behalf of their clients; and 3) are, in the absence of clear evidence to the contrary, deemed to have acted on behalf of their clients. These principles were lucidly articulated by Judge Wilner for this Court in *State v. Lattisaw,* 48 Md.App. 20, 28–29, 425 A.2d 1051 (1981):

*Defense counsel presumably can count to 180 as well as prosecutors;* they know when they entered their appearances—when the clock began to tick—and they can figure out when the time under the Rule expires. These were not inexperienced counsel; according to the record, both attorneys had extensive background in the trial of criminal cases and were well aware of both the Rule and the interpretation given to it in *Hicks. They both agreed to the June 9 date because it was convenient to them and, in the absence of any contrary indication, we assume was acceptable to their clients. ... To require dismissal of an indictment in such*

*a case would be tantamount to doing precisely what the Court said was inappropriate—permitting "the defendant to gain advantage from a violation of the rule when he [through counsel] was a party to that violation."*

(Footnote omitted; emphasis in supplied).

### The Carroll Doctrine Exception to the Warrant Requirement

The appellant will fare better, however, with his second contention. He claims that at a pre-trial hearing on his motion to suppress physical evidence, the hearing judge erroneously declined to suppress the evidence. The evidence consisted of 23 grams of cocaine and approximately $3,150 in U.S. currency. The evidence was seized by deputy sheriffs of the St. Mary's County Sheriff's Department at approximately 1 A.M. on the morning of July 3, 1996. It was discovered as a result of the warrantless search of a red Toyota that had been rented by the appellant several days earlier from the Enterprise Rental Company and was, immediately prior to its stop and search, being driven by the appellant on Route 235 in the vicinity of Lexington Park. It is the Fourth Amendment propriety of that warrantless search that concerns us in this case.

The core protection of the Fourth Amendment is the warrant requirement. As a general rule, nothing less than probable cause will justify an intrusion, even in the service of the investigative imperative, into a protected area, such as an individual's home, automobile, luggage, or pockets. The purpose of the warrant requirement is to make sure that the determination as to whether probable cause exists will be made, whenever reasonably possible, by a neutral and detached member of the judicial branch of government rather than by a member of the executive branch engaged in the investigation and prosecution of crime. The notion is that, absent some dire emergency, you should not be permitted to "call the balls and strikes" if you are a player on one of the competing teams. It is preferable, when feasible, to have a

disinterested umpire make those delicate judgments. The principle was best expressed by Justice Robert Jackson in *Johnson v. United States*, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948):

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists of requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

The guidelines for implementing that warrant requirement were succinctly spelled out by *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971):

> [T]he most basic constitutional rule in this area is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." The exceptions are "jealously and carefully drawn," and there must be "a showing by those who seek exemption ... that the exigencies of the situation made that course imperative." "[T]he burden is on those seeking the exemption to show the need for it."

(Footnotes omitted).

The command of the Fourth Amendment is simple. When the police wish to search a home or an automobile for evidence of crime, the expected way to do business—the norm—is for them to obtain a judicially-issued search and seizure warrant. As a practical matter, however, it is not always possible to do so. When, therefore, it is not possible or feasible to obtain a warrant because of some exigency, the police will be exempted from the warrant requirement. Such exemptions, however, are the exceptions to the rule and not the rule itself. The command of the Fourth Amendment to the American police officer and the American prosecutor is simple:

## "You always have to get a warrant—
## UNLESS YOU CAN'T."

The burden, moreover, is always on the party claiming that he could not get a warrant to establish to the satisfaction of the court precisely why he could not. The police must set forth the exceptional circumstances that justify the exceptional departure from the norm. As a general rule when dealing with any exception to the warrant requirement, the State must rebut the presumptive unreasonableness of a warrantless search and seizure by showing that the set of necessary preconditions for the exception in question has been satisfied. The burden is not that difficult. It is a burden, however, that may not be ignored.

The exception to the warrant requirement that the State relies on in this case is the so-called "automobile exception" or the better-called "*Carroll* Doctrine." A brief word may be in order as to preferred terminology. The use of the term "*Carroll* Doctrine" for this exception avoids some possible confusion emanating from the fact that "automobile exception," as a term, is both under-inclusive and over-inclusive.

It is an under-inclusive term because it fails to make expressly clear that it covers legitimate warrantless intrusions into many repositories of possible evidence that are not literally automobiles. Included are such obvious automobile equivalents as trucks, *United States v. Johns*, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985), and buses. Also included, however, are other possible repositories that share with the automobile the characteristics of 1) ready mobility, *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985) and 2) a lesser expectation of privacy, *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). Covered would be such slightly less obvious automobile equivalents as motorcycles; bicycles; motor homes, *California v. Carney, supra;* motorboats; sailboats, *United States v. Villamonte–Marquez*, 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983); airplanes; wagons; horses with saddlebags; and even

suitcases or other containers, *California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).

Conversely, the term "automobile exception" is over-inclusive because it seems to cover all legitimate warrant-less intrusions into the interior of an automobile when, in fact, it does not. Many legitimate warrantless intrusions into the interiors of automobiles are justified by something other than the combination of 1) probable cause and 2) exigency required by the *Carroll* Doctrine. An intrusion into an automobile may be justified, for instance, as a search incident to lawful arrest. *Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). An automobile may be warrantlessly stopped and searched as a "stop" within the contemplation of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). An automobile may be warrantlessly entered as part of a "frisk" within the contem-plation of *Terry v. Ohio. Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). Items may be warrantlessly seized from an automobile, following a prior valid intrusion for some other purpose, pursuant to the Plain View Doctrine. *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). An automobile may be warrantlessly searched by virtue of the consent exception. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Florida v. Jimeno,* 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). All of these valid warrantless searches of and seizures from automobiles have nothing to do with the so-called "automobile exception." *See also* Moylan, *The Automobile Exception: What It Is and What It Is Not— A Rationale in Search of a Clearer Label,* 27 Mercer L.Rev. 987 (1976).

Yielding seniority only to a warrantless search incident to lawful arrest, which comes to us from English common law,

see discussion in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the legal phenomenon of a legitimate warrantless search of an automobile is the second oldest of what are now the firmly rooted exceptions to the warrant requirement. It was first recognized in the eponymic case of *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). For a good *Carroll* Doctrine search of an automobile, two conditions must coalesce:

1) **PROBABLE CAUSE** to believe that evidence of crime is contained in the automobile or automobile equivalent; and

2) **EXIGENCY**.

The exigency arises from the ready mobility of the automobile or automobile equivalent. It is the risk of imminent disappearance of the automobile or automobile equivalent and, more significantly, the subsumed risk of the imminent disappearance of the probable evidentiary contents of that automobile or automobile equivalent if the police are not permitted to "seize the current as it serves." [1]

### *Probable Cause*

▮▮▮ The appellant argues that the State lacked the probable cause required by the *Carroll* Doctrine for the warrantless search of his automobile. We fully agree with the State, however, that the probable cause to believe that the automobile contained narcotic drugs was abundant. Sergeant Lyle E. Long was a 23–year veteran of law enforcement, who had been assigned to the Narcotics Section of the St. Mary's County Sheriff's Department for approximately ten years.

It was at 11 A.M. on July 2, 1996 when he received the critical telephone call from a confidential informant. A key component of the probable cause in this case was the probable reliability of that informant. It was not an anonymous informant but one with whom Sergeant Long had a previous working relationship. The informant had, moreover, what the

---

1. William Shakespeare, *Julius Caesar,* Act IV, Scene 3.

case law calls "a good track record." The informant had, while working with Sergeant Long, made a controlled buy from a private residence that led to the issuance of an earlier search and seizure warrant. The execution of that warrant, in turn, uncovered a substantial quantity of crack cocaine and resulted in a criminal conviction. Sergeant Long also carefully pointed out that he had never received information from the confidential informant that was found to be false or misleading.

On another occasion, Sergeant Long had interviewed the informant and established the informant's knowledge as to the narcotics traffic generally and as to narcotics activity in St. Mary's County specifically.

The informant told Sergeant Long that the appellant was in the New York City area on that day (July 2) for the purpose of purchasing cocaine. He further reported to Sergeant Long that the appellant would be leaving New York at 11 A.M. that morning and would be returning to St. Mary's County with the cocaine. He informed the Sergeant that the appellant was operating a red Toyota with Maryland license tag number DDY 787. He informed Sergeant Long that the red Toyota was a rental vehicle.

By way of buttressing reliability, the information from the informant was very specific and very detailed. That factor is what the case law has called "self-verifying detail." *See Jackson v. State,* 81 Md.App. 687, 693, 569 A.2d 712 (1990). Such detail has generally been accepted as a way of showing that the informant had first-hand knowledge and was not passing on some mere generalized rumor.

An additional corroborating factor was the information independently possessed by Sergeant Long himself. Sergeant Long indicated that he was already familiar with the appellant prior to receiving the July 2 telephone call. He indicated that he had received information that the appellant was a supplier of cocaine in the Lexington Park area of St. Mary's County. Sergeant Long indicated that he knew the appellant by sight. By way of corroborating the fact that the appellant was

operating a rental car, Sergeant Long knew independently that the appellant had recently had an accident with his own car and was, therefore, in need of finding some substitute vehicle.

Further corroboration of the telephone conversation was immediately forthcoming. Sergeant Long checked the Maryland tag number that had been given him by the informant with the Department of Motor Vehicles and learned that that tag for a red Toyota Corolla had been issued to the Enterprise Rental Car Company. Sergeant Long then checked with Enterprise and learned that the red Toyota in question had been rented by Enterprise to the appellant.

Based on detailed information from a reliable informant and on significant independent corroboration of that information, the police had abundant probable cause to believe that cocaine was being carried in the appellant's automobile.

### The Exigency Component of the Carroll Doctrine

The word "automobile" is not a talisman in whose presence the Fourth Amendment fades away and disappears.

> ... *Coolidge v. New Hampshire*, 403 U.S. 443, 461, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564, 580 (1971)

It is the second of the *Carroll* Doctrine's necessary preconditions for a warrantless search that concerns us in this case. Was there an exigency that prevented the police from obtaining a search warrant for the appellant's car or that even made it significantly difficult to obtain such a search warrant?

The critical confrontation by the St. Mary's County Sheriff's Department and the appellant's automobile occurred at 1 A.M. on July 3 on a rural roadway. Standing at that critical moment in time, Fourth Amendment exigency, like the Roman god Janus, looks both forward and backward in time. Looking forward, no one can contest the State's argument that exigency existed. A readily movable, let alone a moving, automobile on a rural highway in the wee hours of the morning poses a heavy risk of disappearance. Exigency looking in that direction, however, is not our concern in this case.

Our concern is with the thirteen or fourteen hours that preceded that 1 A.M. confrontation. The question is not whether exigency existed at 1 A.M. on July 3. It is whether exigency existed at High Noon on July 2.

It is important that our decision in this case not be read overbroadly. The courts will not stand with a stopwatch monitoring the police effort with stern scrutiny. Heroic efforts to satisfy the warrant requirement are not demanded of them. The general reasonableness of their efforts is all that is realistically required. The courts will continue to be understanding of practical police difficulties and will be indulgent— **TO A POINT**. The exigency requirement is not non-existent, however, and may not be blithely ignored.

██ The bulk of the probable cause in this case had been established when Sergeant Long put down the telephone shortly after 11 A.M. on July 2. Much of the corroboration of the telephoned information already existed in his head. Further significant corroboration required nothing more than two easy and routine telephone calls—one to the Department of Motor Vehicles and the second to the Enterprise Car Rental Company. Although that corroboration might have been a *fait accompli* as early as 11:20 or 11:30 A.M., we will round it off, for purposes of further discussion, at noon.

As of that corroboration, the probable cause in this case was not marginal; it was abundant. With it in hand, the Sheriff's Department clearly had the fully intended purpose of searching the appellant's vehicle once it could be located. As the officers later set out to execute that purpose, theirs was no mere contingent or conditional mission depending on one final piece of the puzzle falling into place. The Sheriff's Department by mid-day on July 2 had all of the probable cause it thought it needed. The Sheriff's Department, moreover, was right in that regard. The question for us is whether it was realistically feasible for them, at that time, to have applied for a search warrant.

Had the probable cause in this case jelled during the evening hours or over a weekend, the result might not be the

same. In this case, however, the probable cause jelled by roughly noon on Tuesday, July 2, 1996, a working day. Had the probable cause been developed at some remote observation post, the result might not be the same. In this case, however, the probable cause was developed in downtown Leonardtown, the county seat. Had the probable cause required some fifteen pages of tightly packed data and had no stenographic resources been available, the result might not be the same. In this case, however, the probable cause was developed in the headquarters building of the Sheriff's Department and could easily have been typed within the four corners of a single page. Had geographic or climatic conditions made access to a judge difficult, the result might not be the same. In this case, however, the Sheriff's Department shared a parking lot with the county courthouse, where two circuit judges normally reside, and a third judge sits at the District Court a short distance away.

In short, the State has failed to carry its burden of showing the type of exigency necessary to exempt it from the warrant requirement. It has not shown that it would have been impossible, or even particularly difficult, for the Sheriff's Department to have obtained a judicially-issued search and seizure warrant for the appellant's car. Absent such a showing, the State may not resort to the *Carroll* Doctrine as a reasonable exemption from the warrant requirement. The warrantless search under the circumstances was not reasonable within the contemplation of the Fourth Amendment.

### Epilogue

Although the warrantless search of the appellant's automobile in this case could not be justified under a *Carroll* Doctrine rationale, we entertained the possibility that it might nonetheless be salvaged under a different rationale, to wit, as a search incident to lawful arrest. The same probable cause that pointed to contraband narcotics being in the appellant's automobile also pointed to the appellant himself as one then engaged in the unlawful possession of such narcotics. That probable cause justified the warrantless arrest of the appellant. A warrantless arrest, provided it is not inside a house, is

not subject to the same exigency requirement that inhibits a *Carroll* Doctrine search of an automobile. *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). When one is arrested, moreover, inside of an automobile or standing close by an automobile, the permitted scope of the automatically available search incident—the *Chimel* perimeter—embraces the passenger compartment of the automobile. *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

◼ Had the evidence in this case been found in the passenger compartment of the appellant's automobile, the warrantless search for and seizure of it would have been reasonable as a search incident to the appellant's lawful arrest even though, as we have held, it was not reasonable under the *Carroll* Doctrine. Unfortunately for the State, however, the alternative theory is of no avail. The evidence in this case was found by the Sheriff's Department inside a duffel bag in the trunk of the appellant's automobile. That was beyond even the arbitrarily extended *Chimel* perimeter afforded by *New York v. Belton.* The warrantless search of the automobile in this case, therefore, had to rise or fall according to the *Carroll* Doctrine.

*JUDGMENT REVERSED; COSTS TO BE PAID BY ST. MARY'S COUNTY.*