725 A.2d 623

Desmond A. WHITING

v.

STATE of Maryland.

No. 707, Sept. Term, 1998.

Court of Special Appeals of Maryland.

March 2, 1999.

Mark Colvin, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Rachel Marblestone Kamins, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Patricia Jessamy, State's Atty., for Baltimore City, on the brief), Baltimore, for Appellee.

Submitted before HOLLANDER, SONNER, and THEODORE G. BLOOM (Retired, Specially Assigned), JJ.

HOLLANDER, Judge.

Following a non-jury trial pursuant to an agreed statement of facts, Desmond A. Whiting, appellant, was convicted on May 13, 1998, by the Circuit Court for Baltimore City of possession of heroin with intent to distribute, possession of cocaine, and unlawful transportation of a handgun. Thereafter, appellant was sentenced to concurrent terms of imprisonment of seven years, four years, and three years, respectively. Prior to trial, the court denied appellant's motion to suppress heroin, vials, glassine bags, and cash seized from the trunk of

a car that appellant had been driving. On appeal, Whiting challenges only that ruling. He asks: "Did the trial court err in denying the motion to suppress the evidence seized from the trunk of the car?"[1] As we perceive no error, we shall affirm.

## I. STANDARD OF REVIEW

In considering the lower court's denial of a motion to suppress, the record at the suppression hearing is the exclusive source of facts for our review. *Lee v. State,* 311 Md. 642, 648, 537 A.2d 235 (1988); *Trusty v. State,* 308 Md. 658, 670, 521 A.2d 749 (1987); *Aiken v. State,* 101 Md.App. 557, 563, 647 A.2d 1229 (1994), *cert. denied,* 337 Md. 89, 651 A.2d 854 (1995). We extend great deference to the first-level fact-finding of the trial judge and accept the facts as found, unless clearly erroneous. *Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239 (1990); *Perkins v. State,* 83 Md.App. 341, 346–47, 574 A.2d 356 (1990). Moreover, we must give due regard to the suppression hearing judge's "opportunity to assess the credibility of the witnesses." *McMillian v. State,* 325 Md. 272, 282, 600 A.2d 430 (1992). *See also Jones v. State,* 111 Md.App. 456, 466, 681 A.2d 1190 (1996). In addition, we review the evidence in the light most favorable to the State as the prevailing party. *Riddick,* 319 Md. at 183, 571 A.2d 1239.

Nevertheless, as to the ultimate conclusion of whether the search was lawful, this Court must undertake its own independent, constitutional appraisal by reviewing the law and applying it to the facts that are not clearly erroneous. *Rid-*

---

1. Appellant does not raise a speedy trial claim. We are constrained to observe, however, that many years elapsed between the time of appellant's arrest in June 1993 and the trial in May 1998. The docket reflects that appellant failed to appear on February 25, 1994, "waived Hicks" on May 12, 1994, and again failed to appear on February 4, 1997. Moreover, the docket indicates that the case was referred to the administrative judge for postponement or was otherwise continued on at least nine occasions. Clearly, several of the postponements were attributable to the defendant. For example, on May 12, 1994, appellant had no attorney, and on July 14, 1994, he asked for more time "to prepare."

*dick,* 319 Md. at 183, 571 A.2d 1239; *see Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Thus, as we said in *Jones,* 111 Md.App. at 466, 681 A.2d 1190, we "make [our] own *de novo* determination of whether probable cause existed in light of the not clearly erroneous first-level findings of fact and assessments of credibility."

## II. THE SUPPRESSION HEARING

The court conducted a suppression hearing on March 25, 1998. Two witnesses testified.

Police officer Phillip Sexton, a twenty-eight-year veteran of the Baltimore City Police Department, testified that, at 2:35 a.m. on June 16, 1993, he was in his police cruiser traveling northbound in the 1300 block of North Fulton Street in Baltimore City. This area was known as "one of the higher drug areas in the city." While driving, the officer noticed a vehicle in front of him with fifteen day "transporter tags." Officer Sexton explained that transporter tags are issued by the Department of Motor Vehicles for persons to travel to and from an inspection station or a repair or storage facility. The officer then observed the car as it turned left onto Lorman Street without signaling. Because Officer Sexton was aware of no inspection station or facility open at that hour, and because the driver had failed to use a turn signal, Officer Sexton decided to stop the vehicle. Accordingly, Officer Sexton turned onto Lorman Street and activated his emergency lights. When the vehicle pulled to the side of the road, Officer Sexton pulled his police cruiser behind the vehicle and stopped. After informing the dispatcher of the vehicle's temporary tag numbers, the officer was advised that the car was not reported as stolen. At that point, Officer Sexton approached the automobile.

Appellant was sitting in the driver's side seat and his girlfriend, Michelle Dison,[2] was sitting in the passenger seat.

---

2. The transcript contains the spelling of the passenger as "Dison", but a summons issued by the State reflects the spelling as "Dyson."

Officer Sexton asked appellant for his license and registration. Appellant, who appeared excited, told the officer that he did not have either his license, the car registration, or any identification. Whiting explained to the officer that he had borrowed the car from his sister to "get some help" for his pregnant girlfriend. According to the officer, appellant directed the officer's attention to Ms. Dison, who was holding her hands in front of her stomach "moaning and groaning, rocking back and forth." Officer Sexton was suspicious of the proffered explanation, because Ms. Dison's stomach appeared flat and she held her hands several inches from her stomach, as if to give the impression of pregnancy. As appellant spoke, he reached three times for a black leather bag located on the front seat of the car between appellant and Ms. Dison. In describing the bag, the officer said it was between eight and nine inches long, and looked "like a bag people use to carrying [sic] shaving gear."

At this point, Officer Sexton became concerned for his safety and called for a back-up unit. About a minute later, Officer Richard Robinson responded. When the back-up unit arrived, Officer Sexton asked appellant to step out of the vehicle. Appellant then placed his hands on the hood of the car. When appellant did so, Office Sexton saw "a hand-made smoking device" that was "altered to smoke crack cocaine," sticking out of appellant's back pants pocket. Officer Sexton then placed appellant under arrest and did a pat down of him. When the officer then asked Ms. Dison to exit the car, she stopped moaning. Officer Sexton noticed a small television set and a pair of electric hair clippers in the back seat of the car. When he directed Officer Robinson to check the black bag located on the front seat, the officer removed a Jennings .25 caliber semi-automatic handgun. At that point, Ms. Dison was placed under arrest.

Because the officers did not know the identity of the car's owner, appellant had no registration, and the vehicle was illegally parked, Officer Sexton decided to impound the car and have it towed to the City's impoundment lot. As Officer Sexton was "responsible for the vehicle and everything inside

the vehicle," he wanted to "inventory any valuables in the car because the car was going to be impounded" by him. Accordingly, Officer Sexton opened the trunk and found a brown paper box which contained rolls of money in the amount of $1,935.00 in cash. He also found 158 clear plastic capsules "full of a white substance . . . ," which he thought was cocaine. The substance was later identified as heroin. The trunk also contained "a whole bagful of glassine bags." Although Officer Sexton did not prepare an inventory sheet for the items recovered from the automobile, he itemized them in his police report.

In his testimony, appellant claimed that he gave Officer Sexton a "card" from the glove compartment that showed the vehicle was owned by his sister, Latangela Higgins. Further, he asserted that the item in his back pocket "wasn't showing."

After hearing arguments from both parties, the suppression court ruled that the officer properly stopped and arrested appellant. The court then denied appellant's motion to suppress the items found in the trunk of the car. As to the search of the trunk, the court reasoned:

> Now I am concerned about what happens afterwards. I'm concerned that there wasn't an inventory. I think an inventory should have been made. I accept that leaving a car at 2:30 at night that doesn't belong to anybody in West Baltimore, even locked, would expose the police and the City of Baltimore to a possible claim. At the same time, I don't see any inventory being made here. So I have to believe, and I do believe that in the absence of there being an inventory, that the officer, either [Officer Sexton] or Officer Robinson [the back-up officer], went into the rear trunk to search it to see if there were drugs. And they found drugs.

> I find, however, . . . that a car is readily mobile, and if there is probable cause to believe that the car itself contains contraband, the Fourth Amendment would seek, permit the police to search the vehicle.

While I'm concerned on that issue, I do find under these facts, having found a weapon, and having found a non-conventional [smoking] device, and being in a circumstance where at least one of the parties was trying to, perhaps, mislead the police by claiming that she was pregnant and maybe both were doing that, and that they then stopped claiming pregnancy or an emergency.

And further, a car that is picked up under these circumstances, in the location and at the time it was all circumstances that The [sic] Court considers as well as the police officer's expertise in finding that there was sufficient probable cause for the officers to believe that the rear of the car contained contraband and permit the search.

## DISCUSSION

Appellant argues on appeal that the trial court erred in failing to suppress the items recovered from the trunk of the car. Acknowledging that he was properly stopped and arrested, appellant argues only that the search of the trunk was illegal. He grounds this assertion on his claim that the police lacked probable cause to believe that the trunk contained contraband.[3] In particular, he asserts that although the pipe was lawfully seized from his person, and the handgun was lawfully recovered from the front seat of his car, these items did not create probable cause to believe that the trunk contained contraband. We disagree.

The Fourth Amendment of the United States Constitution, made applicable to the States through the Fourteenth Amendment, *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), protects against unreasonable searches and sei-

---

3. In his brief, appellant states:

"The trial court properly ruled that the stop of the car, Appellant's arrest for possession of paraphernalia, and the seizure of the gun in the black bag on the front seat were all lawful. Further, the trial court properly determined that the search of the trunk was not a *bona fide* inventory search. The court erred, however, in upholding the search of the trunk on the theory that it was supported by probable cause."

zures. *Braxton v. State,* 123 Md.App. 599, 619, 720 A.2d 27 (1998). The Supreme Court and Maryland courts have consistently recognized that, subject only to a few well-established exceptions, warrantless searches and seizures are *per se* unreasonable. *See McMillian,* 325 Md. at 281, 600 A.2d 430 (*quoting Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)); *Braxton,* 123 Md.App. at 620, 720 A.2d 27.

In *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the Supreme Court established an exception to the warrant requirement with respect to motor vehicles. The Supreme Court recognized

a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

*Carroll,* 267 U.S. at 153, 45 S.Ct. 280. Thereafter, in *United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the Supreme Court relied on the *Carroll* doctrine to uphold the warrantless search of the trunk of an accused's car, stating: "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."

Yet probable cause to search one part of a car does not always create probable cause to search every other part of the vehicle. As *Ross* made clear, "[t]he scope of a warrantless search based on probable cause is no narrower——and no broader——than the scope of a search authorized by a warrant supported by probable cause. Only the prior approval of the magistrate is waived; the search otherwise is as the magistrate could authorize." *Ross,* 456 U.S. at 823, 102 S.Ct. 2157. Just as a warrant "that authorizes an officer to search a home for illegal weapons also provides authority to open closets,

chests, drawers, and containers in which the weapon might be found," *Ross*, 456 U.S. at 821, 102 S.Ct. 2157, so too would a "warrant to search a vehicle ... support a search of every part of the vehicle that might contain the object of the search." *Id.* Nevertheless, the scope of the search must be "legitimate" and its purpose and limits "precisely defined." *Id.* The Supreme Court explained:

> The scope of a warrantless search of an automobile ... is defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase. Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab.

*Id.* at 824, 102 S.Ct. 2157. *See United States v. Seals*, 987 F.2d 1102, 1107 n. 8 (5th Cir.), *cert. denied*, 510 U.S. 853, 114 S.Ct. 155, 126 L.Ed.2d 116 (1993)(interpreting *Ross*, stating that "if officers have probable cause to believe that contraband is in only one part of a car, then they are limited to that area. If, on the other hand, officers have probable cause to believe that contraband is located somewhere in the car, but they don't know exactly where, then they can search the entire vehicle."); *see also Manno v. State*, 96 Md.App. 22, 33–40, 623 A.2d 677, *cert. denied*, 332 Md. 454, 632 A.2d 151 (1993)(discussing the development of the *Carroll* doctrine); Wayne R. LeFave, 3 *Search and Seizure* § 7.2 (3d ed. 1996 & Supp. 1999).

*California v. Acevedo*, 500 U.S. 565, 579–80, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), is also pertinent. There, the Supreme Court recognized that when the police have probable cause to believe that a vehicle contains contraband, they may search the entire vehicle and any containers located within it. More recently, in *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996) (per curiam), the Court

said: "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *See also California v. Carney*, 471 U.S. 386, 390–93, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).

█ Writing for this Court in *Dyson v. State*, 122 Md.App. 413, 712 A.2d 573, *cert. denied*, 351 Md. 287, 718 A.2d 235 (1998), Judge Moylan underscored that the "automobile exception" to the warrant requirement does not legitimize all warrantless searches of motor vehicles. *Id.* at 423, 712 A.2d 573. To uphold a warrantless automobile search under the *Carroll* doctrine, the State must prove both probable cause and exigency. *Dyson*, 122 Md.App. at 424–27, 712 A.2d 573.

Probable cause is defined as a " 'fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. Lee*, 330 Md. 320, 326, 624 A.2d 492 (1993) *(quoting Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)); *see United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Birchead v. State*, 317 Md. 691, 700, 566 A.2d 488 (1989); *Braxton*, 123 Md.App. at 620, 720 A.2d 27. Clearly, "A finding of probable cause requires less evidence than is necessary to sustain a conviction, but more evidence than would merely arouse suspicion." *Collins v. State*, 322 Md. 675, 680, 589 A.2d 479 (1991) (citations omitted). In *Collins*, the Court explained:

> Our determination of whether probable cause exists requires a nontechnical, common sense evaluation of the totality of the circumstances in a given situation in light of the facts found to be credible by the trial judge. Probable cause exists when the facts and circumstances taken as a whole would lead a reasonably cautious person to believe that a felony had been or is being committed by the person arrested. Therefore, to justify a warrantless arrest the police must point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted the intrusion.

*Collins,* 322 Md. at 680, 589 A.2d 479 (citations omitted); *see United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Doering v. State,* 313 Md. 384, 403, 545 A.2d 1281 (1988); *Braxton,* 123 Md. App. at 620–21, 720 A.2d 27.

Exigency arises "from the ready mobility of the automobile. . . ." *Dyson,* 122 Md.App. at 424, 712 A.2d 573. To be sure, the "exigency requirement . . . may not be blithely ignored." *Id.* at 427, 712 A.2d 573. In this case, however, appellant has not challenged the element of exigency.

■ The narrow issue presented here is whether the officers had probable cause to believe that there was contraband in the trunk of the car. As we analyze the probable cause issue, we are mindful that the State has not disputed the suppression court's ruling that the search of the trunk did not constitute a proper inventory search, because the police did not prepare an inventory report and give a copy of that report to the property owner. *See Bell v. State,* 96 Md.App. 46, 58, 623 A.2d 690 (1993), *aff'd on other grounds,* 334 Md. 178, 638 A.2d 107 (1994). Moreover, the State does not suggest that the search of the trunk constituted a valid search incident to an arrest, presumably because the permissible scope of a search of a motor vehicle incident to a lawful arrest of the vehicle's occupant extends to the passenger compartment but not the trunk. *See New York v. Belton,* 453 U.S. 454, 460 n. 4, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

In support of his position, appellant cites numerous cases from other jurisdictions in which those courts suppressed evidence found in the trunks of motor vehicles. In those cases, the amount of illegal substance found in the body of the car or on an occupant generally suggested personal consumption, not distribution. Thus, those courts held that the subsequent trunk searches were illegal. In response, the State relies on numerous cases from other jurisdictions in which the courts upheld warrantless searches of vehicle trunks based on

the recovery of drugs either in the car or on an occupant of the vehicle.

In our review of Maryland law, we have not uncovered any cases similar to the fact pattern presented here, involving: recovery from the driver of a hand-made crack pipe indicative of personal consumption; a handgun in the front seat of the car; a driver who has no registration for the vehicle or identification; a passenger and a driver apparently feigning the passenger's pregnancy. A review of cases from other jurisdictions reveals several cases that are instructive, however. Many of the cases applying the *Carroll* doctrine have found probable cause to search the trunk of a motor vehicle based on evidence apparent to a police officer after a lawful search of the passenger compartment of the vehicle.

In *Commonwealth v. Jiminez*, 22 Mass.App.Ct. 286, 493 N.E.2d 501 (1986), *cert. denied*, 398 Mass. 1102, 497 N.E.2d 1096 (1986), the court upheld the warrantless search of the trunk of a car in which the defendant had been a passenger. The police officer stopped the car after he noticed that the validation sticker affixed to the vehicle's license plate had expired. When the officer approached the vehicle, the driver of the car stepped out and began to walk toward the officer with his hands up. Although the officer ordered the driver back into the car three times, the driver did not comply. Further, the driver stated that he did not have a driver's license; he was driving the car because the passenger was ill. The officer was suspicious, and escorted the driver to the passenger door. At that point, the officer observed the passenger reach quickly toward the bottom of the passenger seat. Fearing for his safety, the officer had both occupants stand in front of the car's headlights. The officer then swept his hand under the passenger seat and discovered a loaded, nine millimeter semi-automatic weapon. After the men were placed under arrest, the officer searched the rest of the car. A foil packet with a powdery substance was discovered over the passenger side visor. The officer then opened the trunk and found a loaded, sawed-off shot gun and a brown paper bag with two parcels inside, later determined to contain cocaine.

Jiminez argued on appeal that the search of the trunk was illegal. The court disagreed, stating that "[o]nce a firearm and contraband had been found in the passenger compartment the police were justified in searching the trunk. . . ." *Jiminez*, 493 N.E.2d at 505.

In *People v. Tingle*, 279 Ill.App.3d 706, 216 Ill.Dec. 323, 665 N.E.2d 383 (1996), *cert. denied*, 168 Ill.2d 620, 219 Ill.Dec. 574, 671 N.E.2d 741 (1996), the court upheld the warrantless search of Tingle's car, including the glove compartment. In that case, several police officers responded to an area because of reported narcotic activity. When they arrived, Tingle was standing with a group of men near an alley. When the officers approached the group, Tingle yelled "5–0," which is a code word used to alert narcotic dealers that police are in the area. When the police arrested Tingle for disorderly conduct, he asked the police to take him to his car, which was nearby, so that he could secure it. When they did, the police observed the handle of a pistol wedged between the arm rest and the driver's seat. The police then searched the rest of the car and found another gun in the glove compartment, along with two wallets that belonged to victims of armed robberies. On appeal, the court rejected Tingle's argument that the warrantless search of the vehicle was illegal. Because Tingle was observed in an area of reputed narcotic activity, had shouted out the code word for police, and the car contained a gun, the court determined that the police had probable cause to search the entire vehicle, including the glove compartment.

Numerous other cases are useful to our analysis. *See, e.g., United States v. Turner*, 119 F.3d 18 (D.C.Cir.1997)(finding probable cause for search of trunk based on the smell of burnt marijuana and recovery from car of torn cigar paper indicative of marijuana use and zip-lock bag containing marijuana); *United States v. Parker*, 72 F.3d 1444 (10th Cir.1995)(finding that smell of burnt marijuana and recovery from the passenger of a rolled-up dollar bill with white power provided probable cause for search of trunk); *United States v. Rickus*, 737 F.2d 360 (3rd Cir.1984)(concluding vehicle search was lawful because of burglary tools in plain view on the back seat,

furtive glances between the driver and the passenger, an attempt to leave the scene, and fact that suspects were wearing bullet-proof vests); *United States v. Orozco,* 715 F.2d 158 (5th Cir.1983)(finding probable cause to search trunk based on recovery of marijuana and drug paraphernalia from the glove compartment, and license plates that did not match the car's registration); *United States v. Watson,* 697 A.2d 36 (D.C.1997)(upholding trunk search based on smell of burnt marijuana and recovery of six zip-lock bags containing white powder from the passenger side door pocket); *State v. Ireland,* 706 A.2d 597 (Me.1998)(finding probable cause for search of trunk based on smell of burnt marijuana and furtive behavior of driver, including her false statement that she had no key to the trunk).

We have recognized the increasingly dangerous nature of the drug trade. Indeed, we have acknowledged a nexus between drug distribution and guns, observing that a person involved in drug distribution is more prone to possess firearms than one not so involved. *See Banks v. State,* 84 Md.App. 582, 591, 581 A.2d 439 (1990); *see also Rich v. State,* 93 Md.App. 142, 159, 611 A.2d 1034 (1992), *vacated on other grounds,* 331 Md. 195, 627 A.2d 537 (1993). In this case, there was more evidence than an isolated gun to support the search of the trunk.

Officer Sexton was a highly experienced veteran of the police department, with ample training and experience in narcotics trafficking. Indeed, he had made between 200 and 250 narcotics-related arrests during his career. At the time in question, the officer was working in a known drug area that was quite familiar to him; he had patrolled the area for 19 years. Moreover, the officer indicated that the particular area of Lorman Street in issue was "one of the higher drug areas" in the City, with "numerous drug arrests, shootings, [and] handgun violations in that area." The experience of a police officer may be considered in determining whether the officer could reasonably believe that an automobile will contain contraband. *State v. James,* 87 Md.App. 39, 45–46, 589 A.2d 81 (1991) (police could lawfully conduct warrantless search of kick

panel of car when probable cause existed to believe that kick panel concealed drugs and related paraphernalia).

Further, it is undisputed that the stop of the vehicle and the search of appellant were lawful. When Officer Sexton approached the car, both appellant and the passenger engaged in deception by pretending that Ms. Dison was pregnant and needed immediate assistance. Moreover, appellant had no license or registration and appeared excited. The officer was concerned because he repeatedly reached for a black bag located on the seat. Once appellant exited the vehicle, the officer observed a crack cocaine smoking device in appellant's rear pants pocket. Then, a handgun was found in the leather bag located on the front seat.

To be sure, the officer expressly indicated that he searched the trunk to conduct an inventory of valuables; he did not state that he suspected the trunk contained contraband. In *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), however, the Supreme Court recognized that the constitutional reasonableness of traffic stops is dependent not on the actual motivations or subjective intentions of the officers involved but, rather, on whether the " 'circumstances, viewed objectively, justify that action.' " *Id.* at 813, 116 S.Ct. 1769 (quoting *Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)). We are satisfied that Officer Sexton possessed probable cause to believe that the trunk contained contraband. Therefore, we conclude that the court did not err in denying appellant's motion to suppress.

**JUDGMENTS AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**