846 A.2d 1090

**Robert Paul BORNSCHLEGAL**

v.

**STATE of Maryland.**

**No. 2418, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

April 14, 2004.

324

William A. Saltysiak, Oakland, for appellant.

Devy Patterson Russell (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Argued before HOLLANDER, SONNER, ADKINS, JJ.

SONNER, J.

The Circuit Court for Garrett County convicted Robert P. Bornschlegal of possession of cocaine, and sentenced him to eighteen months' imprisonment, suspending all but two months. The court also imposed a $2,000 fine. Bornschlegal raises two questions on appeal, which we have set forth here as they appear in his brief:

I. Did the trial court properly conclude that the application and affidavit in support of the first requested search warrant set forth sufficient facts to establish probable cause that the appellant possessed lottery slips or was otherwise engaged in lottery operations or other gaming activities in Maryland and that evidence of those gaming violations would be found at his residence in McHenry, Maryland?

II. Assuming there was a lack of probable cause contained in the application for search warrant and affidavit in support thereof, did the police officers lack an objective reasonable belief in the existence of probable cause when they did not specifically know what the slips of paper with the dates and numbers on them were and when it was known the appellant participated in a dice game in Pennsylvania which was not mentioned/contained in the affidavit?

We find no error and affirm.

## FACTS

Police received information from a confidential informant in March, 2000 that Bornschlegal bought and transported drugs from Pennsylvania for sale in Maryland. A records check for Bornschlegal showed a history of gambling and controlled dangerous substance arrests in Pennsylvania. On May 24, 2001, the police placed Bornschlegal under surveillance because they suspected that he was involved in drug trafficking. The police checked his driving record and learned that Bornschlegal had a suspended Maryland driver's license. Because they knew that if he drove, he would be in violation of the law, they planned to intercept Bornschlegal as he drove from Pennsylvania to Maryland on that Thursday morning, as was his habit. Instead, on that date, police discovered that Bornschlegal was already at his Garrett County, Maryland residence.

Later on that afternoon, however, police saw Bornschlegal driving and they conducted a traffic stop with the intent to arrest him for driving with a suspended license. At the time of the stop, Bornschlegal was not wearing a seatbelt, and that provided a second basis for the traffic stop. A drug dog conducted a perimeter search of the car incident to the arrest for the driving violation, and gave a positive alert indicating the presence of a controlled dangerous substance inside the car. A police search of the car did not, however, disclose any drugs.

The police arrested Bornschlegal for the traffic offense and took him to the police station, where a search of his person revealed a slip of paper with numbers on it, numerous bank checks, and $5,397 in cash. Bornschlegal admitted to the police that the money came from an illegal dice game in Pennsylvania. When asked what he did for a living, Bornschlegal replied that he mostly gambled. The large amount of cash, numerous bank checks, ledger sheets, and Bornschlegal's statement about how he made a living—plus knowledge of his criminal record—raised police suspicions about Bornschlegal's possible gambling activities in Maryland.

That same day, Sergeant Mark Rodeheaver applied for a search warrant for Bornschlegal's Maryland residence. The search warrant contained the following information:

[Y]our affiant observed a traffic stop that was initiated by Cpl. Mike Bittinger, Garrett County Sheriff's Office, on Bornschlegal's vehicle for a seat belt violation on Rt. 219 north of [Oakland,] Garrett County, Maryland. The vehicle was the red Subaru, PA tag DRJ9025 and the driver identified as Robert Bornschlegal, date of birth of 05/09/1939. Cpl. Bittinger caused a check through the Maryland Motor Vehicle Administration which revealed that Bornschlegal's privilege to drive a motor vehicle in the State of Maryland had been suspended. Bornschlegal was arrested for the violation and a search incident to the arrest found Bornschlegal to be in possession of $5397.00 in U.S. Currency. Deputy Dave McLaughlin stated that he scanned the Subaru vehicle and his K9 Tara gave a positive alert for the presence of CDS. After being advised of his Miranda Rights and acknowledging that he understood these rights Bornschlegal stated that the U.S. Currency was profit from an illegal gambling operation which he took part [in] the State of Pennsylvania. Found in Bornschlegal's vehicle and on his person were ledger sheets which appear to be associated to Bornschlegal's involvement in illegal gambling. The sheets contain dates and money amounts that are additions and subtractions and appear to be associated with gambling. When Bornschlegal was asked about his occupa-

tion he stated that he sold a little real estate but mainly gambled for a living. Your Affiant asked Bornschlegal [where] he lived and he stated that he had a residence in Springwoods Acres in McHenry.

Additionally, the affidavit included Bornschlegal's arrest record, which indicated twenty-two arrests in Pennsylvania between 1964 and 1992. Fourteen of those arrests were for operating a lottery, and three arrests were for drug possession.

With warrant in hand, police searched Bornschlegal's home for evidence of illegal gambling operations. While conducting that search, they found three bags of cocaine in plain view in a bedroom dresser drawer, so police stopped the search of Bornschlegal's home, and immediately sought and received a second search warrant to include drugs.[1] The police continued the search, and then charged him with possession of cocaine.

Before trial, Bornschlegal moved to suppress the cocaine evidence. He argued that the original search warrant was defective because the affidavit did not contain sufficient facts to show probable cause in that the affiant did not have specialized training in gambling operations, and therefore, could not conclude that Bornschlegal was engaged in gambling operations in Maryland.

The State replied that Bornschlegal's arrest on May 24, 2001, was a valid *Whren*[2] stop, with the stated purpose of searching for a controlled dangerous substance. The State also argued that the one fruit of the stop, that is the tally sheets or ledgers found on Bornschlegal, violated Maryland law prohibiting possession of gaming paraphernalia, and gave rise to probable cause that he had other illegal gambling materials in his home.

---

1. Police found additional drugs and weapons that are not within the scope of this appeal.

2. *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

The trial court denied Bornschlegal's motion to suppress the cocaine evidence. The court explained:

Now, in this case, I note that the warrant names a specific place, a specific person, adequately describes the residence, and specifies exactly what the Officer may do and [what] he may look for and what he may take.

Now, there's a lot of things when a search warrant is issued that can't be done. In this case, for example, as you point out, [defense counsel], he indicates that, "found in Bornschlegal's vehicle and on his person were ledger sheets, which appeared to be associated with his involvement in illegal gambling." Is that a ledger sheet? Is it his? It appears to the Officer to be involved in illegal gambling. "The sheets contain dates and money amounts that are additions and subtractions that appears to be associated with gambling."

On June 6, 2002, Bornschlegal proceeded on a not guilty statement of facts. The court found him guilty, which prompted this appeal.

## Discussion

### I. Probable Cause

 Our standard of review is whether, in viewing the affidavit for the search warrant as a whole, "there was 'a substantial basis for concluding that the evidence sought would be discovered in the place described' " in the search warrant. *McDonald v. State,* 347 Md. 452, 467, 701 A.2d 675 (1997) (citations omitted). In *State v. Lee,* 330 Md. 320, 326, 624 A.2d 492 (1993), the Court of Appeals stated that the Fourth Amendment of the U.S. Constitution and its counterpart, Article 26 of the Maryland Declaration of Rights, require that no search warrant shall issue without probable cause. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *State v. Amerman,*

84 Md.App. 461, 469, 581 A.2d 19 (1990). "Moreover, we generally pay great deference to a magistrate's determination of probable cause." *Birchead v. State,* 317 Md. 691, 701, 566 A.2d 488 (1989) (citations omitted); *see also Gates,* 462 U.S. at 236, 103 S.Ct. 2317.

"Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *United States v. Leon,* 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (citations omitted); *see also Connelly v. State,* 322 Md. 719, 727, 589 A.2d 958 (1991).

 "The 'substantial basis' standard is less demanding than even the familiar 'clearly erroneous' standard by which appellate courts review judicial fact-finding in trial settings." *West v. State,* 137 Md.App. 314, 325, 768 A.2d 150 (2001) (citations omitted).

In reviewing a warrant under the substantial basis standard, the following must be kept in mind:

Probable cause does not suddenly spring to life at some fixed point along the probability continuum. It may arise at any number of points within a band of not insignificant width. Within that range of legitimate possibilities, the determination is as much an art as a mathematical exercise and relies necessarily upon the eye of the beholder. One judge may give a circumstance great weight; another may give it slight weight; each is entitled to weigh for himself and neither will be legally wrong in so doing. Within proper limits, one judge may choose to draw a reasonable inference; another may as readily decline the inference; each will be correct and each is entitled, therefore, to the endorsement of a reviewing colleague. A permitted inference, after all, is not a compelled inference.

Under the circumstances, it is perfectly logical and not at all unexpected that a suppression hearing judge might say, "I myself would not find probable cause from these circum-

stances; but that is immaterial. I cannot say that the warrant-issuing judge who did find probable cause from them lacked a substantial basis to do so; and that is material." There is a Voltairean echo, "I may disagree with what you decide but I will defend with my ruling your right to decide it."

*State v. Coley,* 145 Md.App. 502, 521–22, 805 A.2d 1186 (2002) (quoting *Amerman,* 84 Md.App. at 463–64, 581 A.2d 19).

■ Bornschlegal argues that Sgt. Rodeheaver failed to state in the warrant application that the money found on Bornschlegal was from an illegal dice game in Pennsylvania, and that Maryland law does not prohibit Bornschlegal from possessing in Maryland monies gained illegally in Pennsylvania. The warrant application refers to gambling operations in Pennsylvania and to lottery paraphernalia. He argues that the warrant is defective because it did not specify to whom Bornschlegal made the statement about participation in illegal gambling activities in Pennsylvania, and gave the impression that Bornschlegal made the statement to the warrant affiant.

Bornschlegal asserts that the State used the warrant-based search for gambling paraphernalia as a ruse to continue their earlier unsuccessful search for a controlled dangerous substance. He argues that the State failed to list bank deposit slips found on Bornschlegal's person during the search incident to arrest, and that a judge might not find probable cause for a warrant if the judge believed that Bornschlegal was driving to the bank to make a deposit. Finally, he argues that there was no nexus to link his admitted participation in regular illegal gambling in Pennsylvania to possible gambling violations in Maryland.

The State responds that the "totality of the circumstances" made it likely that police would find evidence of gambling paraphernalia at Bornschlegal's Maryland residence. *See Gates,* 462 U.S. at 238, 103 S.Ct. 2317. In addition to the large amount of cash on Bornschlegal's person at the time of arrest, he possessed several ledger sheets. Bornschlegal's criminal record showed numerous gambling and drug posses-

sion arrests. Bornschlegal's own statement that he made a living by gambling, in itself, provided strong evidence that police would find gambling or gaming paraphernalia at Bornschlegal's Maryland residence. The State relies on *Holmes v. State*, 368 Md. 506, 522, 796 A.2d 90 (2002), to argue that the nexus between a crime and a place to be searched does not require direct evidence, and that the nexus may be established by inference.

When the police learn that someone gambles illegally in a neighboring state, they are justified in suspecting that the illegal activity does not cease at the state line. *See Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) ("In dealing with probable cause ... we deal with probabilities."). "These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.*

Bornschlegal's admission that he gambled in Pennsylvania gave rise to more than just a hunch that, because he lived in Maryland, he may have violated Maryland's gambling laws. Having the "tools" to gamble illegally in Pennsylvania buttressed that suspicion. The police were justified in their conclusion that he would keep evidence of illegal gambling in his home. A police officer does not need special, or more, experience than a patrol officer to understand and enforce Maryland's gambling laws. The independent judicial officer was correct in concluding that the affidavit supported probable cause. The first search warrant was valid.

■ The subsequent search and discovery of cocaine at Bornschlegal's home was supported by plain view observation. *Smith v. State*, 33 Md.App. 407, 410, 365 A.2d 53 (1976). The police could have seized the cocaine that was in plain view, but, instead, they were cautious and sought a second search warrant, a decision worthy of commendation and respect.

## II. Good Faith

■ Even were we of the opinion that the affidavit lacked probable cause, there would be no grounds to overrule the

search. The U.S. Supreme Court has given powerful support to law enforcement personnel who seize evidence after resorting to neutral, detached magistrates to make the determination of probable cause. "[T]he Fourth Amendment exclusionary rule does not preclude the use of evidence obtained by officers acting in objectively reasonable, good faith reliance on a facially valid search warrant issued by a detached and neutral magistrate but later determined to be unsupported by probable cause." *Connelly*, 322 Md. at 721, 589 A.2d 958.

The "reward" as such for letting a neutral judicial official make the determination of probable cause is that the appellate courts will not overturn searches authorized by valid warrants if they are obtained in good faith. *Massachusetts v. Sheppard*, 468 U.S. 981, 990, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). Here, the police did just what they were supposed to do. They gathered their suspicions, wrote them into an affidavit, and presented them to "a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948). "The notion is that, absent some dire emergency, you should not be permitted to 'call the balls and strikes' if you are a player on one of the competing teams." *Dyson v. State*, 122 Md.App. 413, 420, 712 A.2d 573 (1998). We conclude that the affidavit did contain probable cause, but, even if it did not, there is absolutely nothing in the record to show that the police acted in any way that would amount to a lack of good faith.

The trial court correctly found that the totality of the circumstances provided ample reasons for Sgt. Rodeheaver to swear out the initial search warrant to investigate Bornschlegal's suspected illegal gambling activities in Maryland. Sergeant Rodeheaver submitted the warrant application and affidavit in good faith, with the reasonable belief that Bornschlegal did not confine gambling activities to Pennsylvania, and that police would find evidence of Maryland gambling violations at Bornschlegal's Maryland residence.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.