REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 325

September Term, 2013

_____

CORYEA DOMINIQUE WEBSTER

v.

STATE OF MARYLAND

_____

Berger,
Arthur,
Kenney, James A., III,
       (Retired, Specially Assigned)

JJ.

_____

Opinion by Kenney, J.

_____

Filed: January 28, 2015

Appellant, Coryea Dominique Webster, was charged in the Circuit Court for Frederick County with possession with intent to distribute cocaine, possession of cocaine, possession of marijuana, possession of MDMA, possession of drug paraphernalia, possession of a rifle by a person with a disqualifying offense, possession of a firearm in connection with a drug trafficking offense, and allowing a minor access to a firearm.[1] Tried by a jury and convicted on all counts, appellant was sentenced to twenty years for possession with intent to distribute cocaine; a consecutive twenty years, with all but five years suspended, for possession of a firearm in connection with a drug trafficking offense; a consecutive fifteen years, all suspended, for illegal possession of a rifle; a consecutive four years, all suspended for possession of BZP; and, a consecutive one year, all suspended, for possession of marijuana. Appellant timely appealed and presents the following questions for our review:

> 1. Did the trial court abuse its discretion when it permitted the State to introduce into evidence a notebook, when its probative value was outweighed by its potential for unfair prejudice?
>
> 2. Did the trial court err and abuse its discretion when it permitted an officer to testify that Mr. Webster's nickname was "Yeah-O" and that "Yeah-O" means cocaine in Spanish?
>
> 3. Did the trial court err when it permitted the State, over objection, to amend Count 5 of the indictment from possession of MDMA to possession of BZP?

---

[1] Before trial, the State nol prossed several counts, including one count of possession with intent to distribute PCP, one count of possession of PCP, and two counts of illegal possession of a regulated firearm. As will be discussed in response to the third question, the State also was permitted to amend the possession of MDMA count to possession of BZP.

4. Was the sentence imposed for possession of marijuana illegal?

5. Must Mr. Webster's sentences for possession of a rifle by a person with a disqualifying conviction and possession of a firearm in connection with a drug trafficking offense be merged, where they were based on the possession of a single firearm?

For the following reasons, we shall reverse appellant's conviction for possession of BZP. We also shall vacate appellant's sentence for possession of marijuana and remand for resentencing on that count. Otherwise, the judgments shall be affirmed.

BACKGROUND

At approximately 2:30 p.m. on April 27, 2012, members of the Maryland State Police responded to an address in Frederick as a result of appellant's failure to appear in court. After knocking on the apartment door and receiving no response, the police obtained a key for the apartment, made entry, and discovered appellant back in the rear bedroom with his two-year-old child. At no point during the entry did appellant make his presence known to the police.

When they made entry into the apartment, police recovered a loaded rifle inside a closet near the front door of the residence. After securing that weapon, the police then obtained a search warrant. Police then recovered ammunition, drugs, and drug paraphernalia throughout the apartment.

Trooper First Class Jason Stevens, of the Maryland State Police, offered further details during trial. The rifle recovered from the closet was a Hi-Point nine millimeter semiautomatic rifle. Recovered from the medicine cabinet in the bathroom were 28 small

2

bags of suspected cocaine, a small amount of marijuana, and a suspected half pill of Ecstasy. A razor blade and a digital scale with suspected cocaine residue were recovered from a dresser in the bedroom. In the kitchen, police recovered hundreds of baggies that the trooper testified were consistent with packaging materials for controlled dangerous substances. Hundreds of rounds of ammunition were recovered from two plastic bags found underneath a television in the apartment.

In addition, a Frederick County Detention Center identification card with appellant's picture was located on a nearby nightstand in the bedroom, as were two notebooks.[2] Trooper Stevens testified, without objection, that one of the notebooks contained a list labeled "fiens,"[3] and that, "[a] fiend is a drug addict and many times people involved in distribution of controlled dangerous substances will use a fiend to drive them around to pick up packages and normally the fiend is paid either through cash, or, um, more commonly in drugs."

As for the items recovered from the medicine cabinet, the parties stipulated that: the tablet was .2 grams of benzylpiperazine (BZP), a schedule one drug; the plant material was .5 grams of marijuana; and, the total gross weight of the 28 bags of cocaine was 9.1 grams. Senior Trooper Austin Fogle, who was accepted as an expert, testified that the cocaine recovered from the apartment was consistent with possession with the intent to distribute.

---

[2] Only one of these two notebooks was admitted into evidence at trial.

[3] While the label of the list in the notebook is spelled "fiens," the common spelling of the word is "fiends" and the transcript refers to it as such.

The parties also stipulated that the rifle was an operable nine-millimeter Luger caliber Hi-Point semiautomatic rifle, and that appellant had two prior convictions of second-degree assault which prohibited him from possessing a rifle.

After the State rested, the defense called Kathleen Bedel, who resided at the apartment in question. She confirmed that appellant had stayed with her the week before the arrest, but not the day before. On April 27, 2012, she called appellant early in the morning and asked him to babysit their son. Bedel was unaware of any cocaine being in her apartment and of the rifle in the closet. She testified that appellant's older brother sometimes stayed in her apartment. He, however, had moved out of the apartment about a month prior to this incident. She also testified that the lock to her apartment was broken and, on three prior occasions, she had found evidence indicating that someone had been in her apartment. According to Bedel, her apartment door could be opened with a credit card and appellant knew he could access her residence in that manner. She confirmed that, at times, appellant slept over with her in the master bedroom and that he kept clothing at the apartment.

Appellant testified on his own behalf that he was in the apartment at the time the police arrived, but he claimed that he did not have any knowledge of the contraband recovered from the apartment. He also denied that his nickname was Yeah-O and that the notebook admitted into evidence belonged to him. He did agree that boxer shorts found in the master bedroom most likely belonged to him. He kept clothes in the apartment and had

4

been in an "on and off" relationship with Bedel for three years. He also testified that he had been unemployed for the last year and did not have any fixed address.

We shall include additional detail in the following discussion.

DISCUSSION

I.

Appellant first contends the court erred in admitting a notebook because its probative value was greatly outweighed by its potential for unfair prejudice. The State responds that the grounds asserted on appeal are different from those that were raised at trial and that the argument is without merit in any event. We agree with the State.

Prior to trial, the court granted a motion *in limine* to preclude any testimony concerning gang-related activity after defense counsel noted that one of the two notebooks recovered mentioned rules for the East Side Bounty Hunters, a subset of the Bloods gang. Thereafter, when Trooper Stevens was asked about the contents of the notebooks, the court sustained an objection when the officer replied that there were rules for that gang in one of the notebooks. Subsequently, the State offered to admit the other notebook, identified as State's Exhibit 9 at trial. Defense counsel objected on the grounds that "[i]t has a lot of gang stuff." The court reviewed the notebook being proffered and the following ensued:

> THE COURT: It, it almost looks like rap poems to me. Obviously there's some pictures and some drawings.
>
> [PROSECUTOR]: Mmm-hmm. There's testimony –
>
> THE COURT: There's a picture of a gun.

5

[PROSECUTOR]: There's –

THE COURT: Like a drawing of a gun.  Some drawings.  Face with a – there's a gun, there's a face with a tongue sticking out.  (Unclear - one word) . . . (unclear - one word), looks like a grocery list.

[PROSECUTOR]: Mmm-hmm.

THE COURT: Wipes, bottle, milk, (unclear - one word) cups, (unclear - one word) drinks.  Katie, emails, another picture of a gun and a face, an address, (unclear - one word), some math, one gram plus one gram.  Some more math.  Pictures.  Looks like another, phone numbers, another picture of a gun, picture of a shirt, and I don't know, some pictures of some writing with some flames coming out of it.

[DEFENSE COUNSEL]: And there's a, there's a second one and I just, and these are the copies they gave me, but –

THE COURT: Well, this is the one, what's this marked?  Has it got a sticker on it –

[DEFENSE COUNSEL]: Nine –

[PROSECUTOR]: This is nine –

[DEFENSE COUNSEL]: That's nine.

THE COURT: Are you objecting to nine?

[DEFENSE COUNSEL]: Yes because I think the books may contain information or, or the witness may speculate that and interpret some of the information *as being gang-related or something like that*.

[PROSECUTOR]: Actually the purpose of this book is for drug-related activity.  Your Honor pointed out the grams.

THE COURT: Yeah.

[PROSECUTOR]: The word fiends was also in there –

6

THE COURT: Yes, I did see –

[PROSECUTOR]: – which was testified to previously –

THE COURT: Yeah.

[PROSECUTOR]: The list with the names and the phone numbers.

THE COURT: Right.

[PROSECUTOR]: This is the evidence of that. I believe this is –

THE COURT: Okay, I –

[PROSECUTOR]: – extremely probative.

(Emphasis added).

The court then overruled the objection to State's Exhibit 9 as follows:

THE COURT: I, um, I've reviewed Exhibit Number 9 and stated for the record some of the things that I was seeing in it. I do believe it is relevant as to drug activity and I don't see anything that to this Court, this looks like some poems and luminati [sic], some poems and things and rap type poems and pictures, phone numbers, grocery list, emails. Nothing to this Court that is overtly gang-related. Nevertheless I don't think the, there's anything about any prejudicial information in here. There's fiends under a bunch of phone and then above phone numbers, several, looks like seven –

[PROSECUTOR]: Appear to be phone numbers –

THE COURT: – phone numbers. So I don't find that prejudicial value outweighs the probative value. I'm overruling the objection, allow you –

[DEFENSE COUNSEL]: Okay, thank you, Your Honor –

7

THE COURT: – to submit it. You're welcome –[4]

Maryland Rule 8-131(a) provides, in pertinent part:

Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

The purposes of Rule 8-131 are:

"(a) to require counsel to bring the position of their client to the attention of the lower court at the trial so that the trial court can pass upon, and possibly correct any errors in the proceedings, and (b) to prevent the trial of cases in a piecemeal fashion, thus accelerating the termination of litigation."

*Fitzgerald v. State*, 384 Md. 484, 505 (2004) (quoting *County Council v. Offen*, 334 Md. 499, 509 (1994)); *accord Robinson v. State*, 404 Md. 208, 216-17 (2008).

Moreover, "[w]here a party asserts specific grounds for an objection, all other grounds not specified by the party are waived." *Thomas v. State*, 183 Md. App. 152, 177 (2008) (citing *Klauenberg v. State*, 355 Md. 528, 541 (1999)); *Ayala v. State*, 174 Md. App. 647, 665 (2007) ("It is well-settled that when specific grounds are given at trial for an objection, the party objecting will be held to those grounds and ordinarily waives any grounds not specified that are later raised on appeal.") (quotation and citation omitted); *see also Gutierrez v. State*, 423 Md. 476, 488 (2011) (reiterating that "when an objector sets forth the specific grounds for his objection . . . the objector will be bound by those grounds and will ordinarily

---

[4] The court admitted State's Exhibit 9. The notebook not admitted, State's Exhibit 10, is the one that contains rules for the East Side Bounty Hunters. Both notebooks, State's Exhibits 9 and 10, are included with the record on appeal.

be deemed to have waived other grounds not specified") (quotation and citation omitted).

Our review of the record in this case persuades us that appellant's objection was to any "gang-related" evidence that may have been admitted, either through one of the notebooks or the testimony of Trooper Stevens. It was this concern that informed the trial court's analysis. We are unable to conclude, as appellant now asks us to do, that defense counsel's addition, "or something like that," raised additional, unstated grounds beyond the explicit concern about gang evidence. Therefore, this issue was not properly preserved.

But, even if preserved, we conclude that the trial court properly exercised its discretion in admitting the notebook identified as State's Exhibit 9. This Court has stated:

> "A ruling on the admissibility of evidence ordinarily is within the trial court's discretion. *Blair v. State*, 130 Md. App. 571, 592 (2000). This Court generally reviews such rulings for an abuse of discretion. *State v. Simms*, 420 Md. 705, 724-25 (2011). "An abuse of discretion occurs 'where no reasonable person would take the view adopted by the [trial] court,' or when the court acts 'without reference to any guiding rules or principles.'" *Brass Metal Prods. v. E-J Enters.*, 189 Md. App. 310, 364 (2009) (quoting *King v. State*, 407 Md. 682, 697 (2009)).

*Hajireen v. State*, 203 Md. App. 537, 552 (2012) (internal parallel citations omitted); *see also Gordon v. State*, 431 Md. 527, 533 (2013) ("[O]rdinarily a trial court's rulings on the admissibility of evidence are reviewed for abuse of discretion." (citing *Hopkins v. State*, 352 Md. 146, 158 (1998))).

Maryland Rule 5-401 provides that:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Further:

> "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Md. Rule 5-401; *accord Snyder v. State*, 361 Md. 580, 591 (2000). In addition, evidence, even if relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Md. Rule 5-403. "[T]he admission of evidence is committed to the considerable discretion of the trial court." *Sifrit v. State*, 383 Md. 116, 128 (2004) (citing *Merzbacher v. State*, 346 Md. 391, 405 (1997)). "The discretion necessarily entrusted to the umpire on the field embraces, by definition, a range of rational decisions. Within that range a trial judge may freely rule in either direction without fear of being overturned." *Tate v. State*, 176 Md. App. 365, 408 (2007), *vacated on other grounds*, 405 Md.106 (2008).

*Allen v. State*, 192 Md. App. 625, 651-652 (2010) (internal parallel citations omitted).

But, even relevant evidence may be excluded:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Maryland Rule 5-403; *see Decker v. State*, 408 Md. 631, 640 (2009) ("Relevant evidence may be excluded, however, if it is unfairly prejudicial, confusing to the fact finder, or a waste of time."); *see also Tipton v. State*, 39 Md. App. 578, 585 (1978) (even if relevant, trial judge should weigh factors going to probative value, such as likelihood jury may be aroused by emotion or otherwise distracted; that evidence will consume an undue amount of time; and the danger of unfair surprise).

On appeal, appellant identifies four areas of particular concern from the admission of the notebook: (1) the word "gram" and a heading labeled "fiens;" (2) drawings of guns;

10

(3) rap poems containing violent references and provocative language; and, (4) one passage suggesting prior contact with law enforcement. As for appellant's concern about the word "fiens," it appears that was waived because, as set forth in our background discussion, Trooper Stevens testified, without objection, to the meaning of fiends in the context of drug distribution. *See Yates v. State*, 429 Md. 112, 120-21 (2012) ("Where competent evidence of a matter is received, no prejudice is sustained where other objected to evidence of the same matter is also received." (citation and internal quotation marks omitted)); *see also DeLeon v. State*, 407 Md. 16, 30-31 (2008) (holding that a defendant waived an objection to what he claimed was not relevant and also highly prejudicial testimony about his purported gang affiliation because "evidence on the same point [was] admitted without objection" elsewhere at trial).

As for appellant's remaining contentions, we are not persuaded that the trial court abused its discretion. Certainly, no objection or argument was raised that the notebook contained inadmissible other crimes evidence, as appellant now asserts on appeal. And, we are not persuaded that the probative value of the drawings of guns, the calculation of grams, and the listing of "fiens" was substantially outweighed by the danger of unfair prejudice given the relevance of such evidence to the issues before the jury. As to the drawings, it has been often stated, "[t]here can be no serious dispute that there is an intimate relationship between violence and drugs." *Marks v. Criminal Compensation*, 196 Md. App. 37, 70 (2010); *see also Burns v. State*, 149 Md. App. 526, 542 (2003) ("The intimate connection

11

between guns and narcotics is notorious"); *Whiting v. State*, 125 Md. App. 404, 417 (1999) ("we have acknowledged a nexus between drug distribution and guns"); *Banks v. State*, 84 Md. App. 582, 591 (1990) ("[p]ossession and indeed, use, of weapons, most notably, firearms, is commonly associated with the drug culture"). The trial court neither erred nor abused its discretion in admitting the notebook into evidence.

## II.

Appellant next asserts the trial court erred in admitting evidence of his alleged nickname because that evidence amounted to inadmissible hearsay and improper propensity evidence. The State responds that, to the extent preserved, the trial court properly exercised its discretion.

Prior to jury selection, appellant moved *in limine* to prevent Trooper Stevens from testifying that appellant's nickname was a slang Spanish word for cocaine. The court denied the motion, noting that it would consider objections to that effect during trial. Thereafter, during Trooper Stevens' testimony about the seizure of evidence from appellant's apartment, the following ensued:

> There were also two notebooks which were located. The notebooks had information, ah, they, they had the name Yeah-O, which I know to be a nickname for Mr. Webster. Yeah-O is a slang term for cocaine.
>
> [DEFENSE COUNSEL]: Ob, objection, Your Honor, it's . . . non-responsive.
>
> THE COURT: All right. Sustain. Strike. Ask you to continue. Please strike that.

BY [PROSECUTOR]:

Q. So you said you found a book that had the name Yeah-O in it? Is that correct?

A. Yes sir. Two books.

Q. Okay. And you said Yeah-O's a name you know as who?

[DEFENSE COUNSEL]: Objection.

THE COURT: Overrule.

THE WITNESS: Um, Coryea Webster's known as Yeah-O on the street.

BY [PROSECUTOR]:

Q. Okay. And you said you know that word to mean what?

A. Cocaine.

Appellant's primary argument is that the evidence that his nickname was "Yeah-O" amounted to inadmissible hearsay.[5] Under the Maryland Rules, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Md. Rule 5-801(c). A "statement" is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Md. Rule 5-801(a). A "declarant" is "a person who

---

[5] Appellant's second objection on this issue was general. The Court of Appeals has recognized that "a party basing an appeal on a 'general' objection to admission of certain evidence, may argue any ground against its inadmissibility." *Johnson v. State*, 408 Md. 204, 223 (2009) (citations omitted).

makes a statement." Md. Rule 5-801(b). Further, "[e]xcept as otherwise provided by these rules or permitted by applicable constitutional provisions or statutes, hearsay is not admissible." Md. Rule 5-802. "Thus, a circuit court has no discretion to admit hearsay in the absence of a provision providing for its admissibility. Whether evidence is hearsay is an issue of law reviewed *de novo*." *Bernadyn v. State*, 390 Md. 1, 8 (2005); *accord Thomas v. State*, 429 Md. 85, 98 (2012).

Courts generally begin by identifying the proposition that the evidence was offered to prove. *See Bernadyn*, 390 Md. at 10 ("We therefore begin our inquiry by identifying the proposition that the medical bill was offered to prove.") (citation omitted); Murphy, *Maryland Evidence Handbook* § 702, at 305 (4th ed. 2010) ("When an out-of-court statement is offered in evidence, the trial judge must first determine why it is being offered").

In this case, the State sought to establish that the notebook admitted into evidence, State's Exhibit 9, was circumstantially linked to appellant because the front cover of the notebook lists the name "Ya Yo," and the testimony of Trooper Stevens was that appellant was known by the similar nickname "Yeah-O." Appellant contends his nickname qualified as hearsay. Many authorities suggest that is not the case. Professor Wigmore explains:

> A person's *name* is the title by which he himself and others habitually call him.
> To know a person's name, therefore, is to have heard him so called by himself
> and by others. In strictness, such an utterance is not hearsay, except where it
> is made as an assertion of fact. But, though it may be hearsay, as a source of
> information, yet is universally relied upon as a source of knowledge. Courts
> have commonly accepted the testimony founded upon it.

14

2 Wigmore, Evidence § 667a, at 928 (Chadbourne rev. 1979) (emphasis in original).

Further:

> One virtually always learns a name – even one's own – by being told what it is. *See United States v. May*, 622 F.2d 1000, 1007 (9th Cir.), *cert. denied*, 449 U.S. 984 (1980). Nevertheless, evidence as to names is commonly regarded as either not hearsay because it is not introduced to prove the truth of the matter asserted, . . ., or so imbued with reliability because of the name's common usage as to make any objection frivolous.

*U.S. v. Allen*, 960 F.2d 1055, 1059 (D.C. Cir. 1992) (some internal citations omitted); *see also State v. Shields*, 619 S.W.2d 937, 940 (Mo. Ct. App. 1981) ("Evidence of the name by which a person is known is not within the rule excluding hearsay evidence."); *State v. Barnett*, 254 S.E.2d 199, 201 (N.C. Ct. App. 1979) ("The name a person is called is a fact, and in this case the witness was testifying to such a fact within his own knowledge"); *State v. Johnson*, 13 A.3d 1064, 1066 (R.I. 2011) ("[A] multitude of courts have held that evidence about a person's nickname, in this context, does not constitute hearsay because the use of such a name does not rise to the level of an assertion"); *State v. Feyereisen*, 345 N.W.2d 58, 60 (S.D. 1984) ("[T]here is substantial authority that evidence of a name by which a person is known is not within the rule excluding hearsay evidence.").

Under the circumstances in this case, Trooper Stevens' testimony regarding a notebook with a particular nickname on it that was found in the apartment was not offered as circumstantial evidence of appellant's involvement in the drug trade. Neither his on and off again presence in the apartment nor his actual presence when the police arrived was an issue. As to the nickname that tied appellant to the notebook being hearsay, the Ninth

15

Circuit has recognized:

> We do not think that the name is hearsay. In a sense, it is. We can know a person's name only by being told, either by the person or someone else, unless, of course, we happen to have christened the person. But a name, however learned, is not really testimonial. Rather, it is a bit of circumstantial evidence.

*May*, 622 F.2d at 1007; *see also U.S. v. Weeks*, 919 F.2d 248, 251 (5th Cir. 1990) (holding that witness's testimony about a person's nickname reported non-assertive oral conduct and was not hearsay); *U.S. v. Day*, 591 F.2d 861, 884-85 (D.C. Cir. 1978) (concluding that note bearing defendant's name found on coconspirator is nonhearsay) (collecting similar cases); *U.S. v. Snow*, 517 F.2d 441, 443-44 (9th Cir. 1975) (holding that a name tag bearing defendant's name affixed to machine gun case treated as circumstantial evidence only and nonhearsay).

We recognize that an important part of appellant's argument is that the State also used Trooper Stevens' testimony to suggest that appellant's nickname was slang for "cocaine." In other words, appellant's contention is that the State sought to have the evidence admitted for the truth of the matter asserted. However, appellant's only objection to that testimony at trial was that the testimony was non-responsive. And, as appellant concedes, he waived any objection to this evidence by not objecting when Trooper Stevens testified a second time that Yeah-O was slang for cocaine. As the Court of Appeals has reaffirmed, "[o]bjections are waived if, at another point during the trial, evidence on the same point is admitted without objection." *DeLeon*, 407 Md. at 31 (citing *Peisner v. State*, 236 Md. 137, 145-46 (1964)); *see also Klauenberg v. State*, 355 Md. 528, 545 (1999) ("This also requires the party

16

opposing the admission of evidence to object each time the evidence is proffered by its proponent"). Thus, the only issue properly before this Court is whether Trooper Stevens' testimony about the presence of appellant's alleged nickname on the notebook amounted to hearsay, and we conclude that there was no error when the trial court overruled the objection and admitted the evidence at issue.

Moreover, we are persuaded that if there was any error it was harmless beyond a reasonable doubt. *See Bellamy v. State*, 403 Md. 308, 332 (2008) ("Once it has been determined that error was committed, reversal is required unless the error did not influence the verdict; the error is harmless only if it did not play any role in the jury's verdict.") (quotation and citation omitted). As indicated, the State was offering appellant's nickname and its alleged meaning as circumstantial evidence connecting appellant to other evidence recovered in the apartment. And yet, that evidence, *i.e.*, appellant's purported nickname on a notebook found there, was cumulative to other evidence establishing appellant's relationship to the apartment and its contents. *See Dove v. State*, 415 Md. 727, 743-44 (2010) ("In considering whether an error was harmless, we also consider whether the evidence presented in error was cumulative evidence. Evidence is cumulative when, beyond a reasonable doubt, we are convinced that there was sufficient evidence, independent of the [evidence] complained of, to support the appellant['s] conviction[].") (quotation and citation omitted). Other evidence tying appellant to the apartment included Trooper Stevens' testimony that he was familiar with appellant and had spoken with him on prior occasions.

He also knew appellant's address, and that appellant lived at that location with his child and the mother of his child. There was also Bedel's testimony confirming that appellant had stayed in her apartment, specifically sleeping over in the master bedroom and keeping clothes there, and that she had invited him over on the day in question to babysit their two-year-old son. Moreover, in addition to the direct evidence that appellant was present in the apartment when the police arrived, a Frederick County Detention Center identification card with appellant's picture was located on the nightstand in the bedroom, and appellant admitted that he stayed there on occasion and kept clothes in the apartment. Accordingly, there was other evidence beyond the notebook that demonstrated a strong connection between appellant and the apartment. And, to the extent that appellant's defense was that he just happened to be present when the police arrived and that the contraband belonged to someone else, a rational finder of fact could nevertheless conclude that appellant jointly and constructively possessed the items in question. *See Moye v. State*, 369 Md. 2, 14 (2002) ("The State did not need to show that Moye exercised sole possession of the drugs and paraphernalia. Rather, a person may have actual or constructive possession of the CDS, and the possession may be either exclusive or joint in nature").

## III.

Appellant argues that, prior to jury selection, the court erred in permitting the State to amend Count 5 of the indictment, which provided as follows:

COUNT 5 - POSSESSION OF CDS

18

And, the Jurors aforesaid, do on their oaths and affirmations present that Coryea Dominique Webster, on or about April 27, 2012, at Frederick County, Maryland, unlawfully did possess a controlled dangerous substance to Schedule I, to wit: Methylenedioxymethamphetamine (MDMA), a non-narcotic drug; contrary to the form of the Act of Assembly in such cases made and provided and against the peace, government, and dignity of the State. (Criminal Law 5-601) CJIS Code: 4 3550.

The State sought to amend the count because the results of drug testing indicated that the pill found in appellant's apartment actually contained benzylpiperazine, "BZP," as opposed to methylenedioxymethamphetamine, "MDMA." The State noted that the count charged illegal possession of a controlled dangerous substance and that both MDMA and BZP were identified under Schedule I. *See* Md. Code (2002, 2012 Repl. Vol., 2014 Supp.) § 5-402(d)(1)(xviii) of the Criminal Law Article ("Crim. Law"), (MDMA is a Schedule I drug); Crim. Law § 5-402(a)(3) (Maryland Schedule I drugs include drugs classified as such under federal law); 21 C.F.R. 1308.11(f)(2) (BZP is a Schedule I drug). The State also noted that the penalty remained the same whether the count listed MDMA or BZP. *See* Crim. Law § 5-601 (prohibiting the possession of controlled dangerous substances and penalizing such illegal possession by up to four years' incarceration). After appellant objected, the court permitted the amendment, noting that possession of both substances was illegal under Crim. Law § 5-601.

Maryland Rule 4-204 provides:

On motion of a party or on its own initiative, the court at any time before verdict may permit a charging document to be amended except that if the amendment changes the character of the offense charged, the consent of the parties is required. If amendment of a charging document reasonably so

19

requires, the court shall grant the defendant an extension of time or continuance.

As this Court stated in *Albrecht v. State*, 105 Md. App. 45 (1995):

Generally speaking, amendments that have been deemed to be merely changes of form have been such things as a clerical correction with respect to the name of a defendant, the substitution of one name for another as a robbery victim, a change in the description of money, changing the name of the owner of property in a theft case, and changing the date of the offense. An amendment as to substance, by contrast, would change the very character of the offense charged.

*Albrecht*, 105 Md. App. at 68; *accord Holbrook v. State*, 133 Md. App. 245, 259 (2000).

In considering the "character of the offense," the Court of Appeals has explained:

We thus think it clear that there is a change in the character of the offense charged where the amendment "change[s] the basic description of the offense," *Gray v. State*, [216 Md. 410,] 416 [(1958)]; it is equally clear that the basic description of the offense is indeed changed when an entirely different act is alleged to constitute the crime.

*Thanos v. State*, 282 Md. 709, 716 (1978).

In arguing that the court erred in permitting the amendment, appellant relies on *Johnson v. State*, 358 Md. 384 (2000). In that case, the defendant was charged with possession with intent to distribute marijuana and simple possession of marijuana. *Id.* at 386. Prior to trial, the State was allowed to amend the charge to allege that the substance was crack cocaine. *Id.* The Court of Appeals concluded that the character of the offense changed and the amendment should not have been permitted. The Court of Appeals reasoned that changing the identity of a controlled dangerous substance changes the identity of the offense. *Id.* at 392. The Court reasoned:

"the identification of the particular controlled dangerous substance involved in a given offense is so inextricably tied to the critical matters of the appropriate unit of prosecution and the permissible or mandated punishment that it must be treated as an element of the offense."

*Id.* at 391 (quoting *State v. Simpson*, 318 Md. 194, 198 (1989)).

We are persuaded that *Johnson* controls the outcome in this case. Accordingly, we hold that the trial court erred in permitting the amendment and reverse appellant's conviction on this count.

IV.

Appellant next contends the trial court erred in imposing a one year sentence for possession of marijuana because that exceeded the applicable penalty provision at the time of sentencing.[6] Appellant cites *Waker v. State*, 431 Md. 1 (2013) in support of his argument. The State disagrees, arguing that *Waker* is inapplicable and that *Stubbs v. State*, 406 Md. 34 (2008) is controlling. We agree with appellant.

Appellant was arrested on April 27, 2012. The indictment against him was filed on June 1, 2012. The parties stipulated that the amount of marijuana seized in this case was .5 grams. Appellant was convicted by a jury on October 12, 2012 and then subsequently sentenced on February 21, 2013.

Earlier, on May 2, 2012 Governor Martin O'Malley had signed Senate Bill 214,

---

[6] We note that appellant's sentencing arguments are preserved for our review even though he did not object to the sentences when imposed. When a court imposes a sentence that is not authorized by law, the sentence is illegal. *Waker v. State*, 431 Md. 1, 7 (2013). Under Md. Rule 4-345(a), an illegal sentence may be corrected at any time.

21

which repealed and reenacted with amendments the penalty provision for possession of marijuana. 2012 Md. Laws, ch. 193. The law, which took effect on October 1, 2012, was enacted for "the purpose of establishing a reduced penalty for a person convicted of the use or possession of less than a certain quantity of marijuana[.]" The law added the following language to the penalty section for possession of marijuana: "A person convicted of the use or possession of less than 10 grams of marijuana is subject to imprisonment not exceeding 90 days or a fine not exceeding $500 or both." *See* Crim. Law § 5-601(c)(2)(ii). Thus, this penalty provision was in effect on the day appellant was convicted and on the day of his sentencing.

We are guided in our conclusion that appellant's sentence should be vacated by *Waker, supra*. There, on March 30, 2009, Waker committed what was then a felony theft – theft of property valued at more than $500, the penalty for which was, at that time, a maximum sentence of 15 years imprisonment and/or a $25,000 fine. *See Waker*, 431 Md. at 5; Crim. Law § 7-104(g)(1) (superseded). During the 2009 session, the Maryland General Assembly amended the Maryland theft statute. *Waker*, 431 Md. at 2. The bill, which became effective October 1, 2009, changed the dividing line between misdemeanor and felony thefts. *Id.* Under the new law, the dividing line was $1,000, with a maximum sentence for misdemeanor theft under $1,000 being 18 months, a $500 fine or both, and a maximum sentence for felony theft between $1,000 and $10,000 being 10 years, a $10,000 fine, or both. *See* Crim. Law § 7-104(g).

22

Six weeks after the law took effect, on December 11, 2009, Waker was tried on an agreed statement of facts and found guilty of theft of property having a value of $615 and sentenced to 10 years of imprisonment. *Waker*, 431 Md. at 2. He appealed arguing that his sentence was illegal because the trial court should have applied the penalty in effect at the time of trial and sentencing, which allowed for a maximum sentence of 18 months of imprisonment and/or a $500 fine. *See Waker*, 431 Md. at 6; Crim. Law § 7-104(g)(2). The Court of Appeals agreed, holding that it is "the penalties . . . in effect at the time the trial court imposed sentence" which control. *Id.* at 11. Thus, Waker could only be sentenced to no more than 18 months in prison and/or a $500 fine because that was the law in effect when he was sentenced. *Id.* at 13.

The State responds that *Waker* is inapplicable and that *Stubbs v. State*, 406 Md. 34 (2008) controls. *Stubbs* concerned the Maryland General Assembly's addition in 2004 of a new provision for theft of property valued at less than $100. *See Stubbs*, 406 Md. at 36; Crim. Law § 7-104(g)(3). Two years after the amendment went into effect, Stubbs stole a set of wrenches from Home Depot, which were valued at $139.86. *Stubbs*, 406 Md. at 39. He was charged with theft of property valued at less than $500. *Id.* at 40. However, the only evidence presented at trial regarding value was that the stolen wrenches were worth $69.93. *Id.* at 40-41. Stubbs argued that the State should have charged him with theft of property valued at less than $100, and the State had not met its burden of proving beyond a reasonable doubt that he was guilty of theft of less than $500. *Id.* at 41-42. The trial court

denied the motion, and upon conviction of theft under $500, sentenced him to 18 months imprisonment. *Id.* at 42.

The Court of Appeals affirmed Stubbs' conviction and sentence. *Id.* at 44. In reaching this conclusion, the Court looked to the legislative history and the language of the 2004 amendment to the theft statute. Specifically, the Court looked to the recommendations of an appointed ad hoc committee formed to analyze jury prayers from the district court. The committee concluded that more matters would be resolved at the district court level if the State had greater discretion in charging certain misdemeanors. *Id.* at 45. The Court additionally noted that, unless the offense of theft under $100 was specifically charged by the State, the offense was not be a lesser included offense of theft of property. *Id.* at 47; *see also* Crim. Law § 7-108(d).

*Stubbs* is distinguishable from appellant's case. The issue there concerned the charging of a crime and penalty imposed. Here, we are only concerned with the penalty imposed. Moreover, the purposes of the amended statutes differ. In *Stubbs*, the purpose of amending the penalty provision of the theft statue was jurisdictional – to give the State's Attorney's Office the discretion to bring certain theft cases in district court rather than the circuit court. Here, the purpose of amending the penalty provision for possession of marijuana was to decriminalize and reduce the penalties for possession of small amounts of marijuana.

For the above reasons, we are persuaded that trial court erred in imposing a sentence

24

of one year on appellant's possession of .5 grams of marijuana. Accordingly, we shall vacate that sentence and remand for re-sentencing. *See* Md. Rule 8-604(d)(2) ("In a criminal case, if the appellate court reverses the judgment for error in the sentence or sentencing proceeding, the Court shall remand the case for resentencing").[7]

## V.

Finally, appellant contends that his sentence for possession of a firearm in nexus to a drug trafficking crime, pursuant to Crim. Law § 5-621, must merge with his sentence for possession of a rifle after being convicted of a crime of violence, pursuant to Md. Code (2003, 2011 Repl. Vol., 2014 Supp.), § 5-206 of the Public Safety Article ("P.S."), under either the rule of lenity or fundamental fairness. We disagree.[8]

Crim. Law § 5-621 provides, in pertinent part:

> (a) *Definitions.* – (1) In this section the following words have the meanings indicated.
>
> (2) "Drug trafficking crime" means a felony or a conspiracy to commit a felony involving the possession, distribution, manufacture, or importation

---

[7] We note that the General Assembly has again amended Section 5-601(c)(2)(ii), and that provision now provides, effective October 1, 2014, in pertinent part: "A first violation of this section involving the use or possession of less than 10 grams of marijuana is a civil offense punishable by a fine not exceeding $100." To the extent there is any question which version of the statute controls on remand, we simply note that "at a resentencing, 'the sentencing court must approach its task as if no sentence had ever been imposed.' Therefore, the 'trial court is charged ... with 'exercising its sentencing discretion' as if the sentencing was occurring for the first time.'" *Parker v. State*, 193 Md. App. 469, 489 (2010) (quoting *Bartholomey v. State*, 267 Md. 175, 193 (1972)); *accord Twigg v. State*, 219 Md. App. 259, 286 (2014).

[8] Appellant did argue for merger of these sentences at the disposition hearing.

of a controlled dangerous substance under §§ 5-602 through 5-609 and 5-614 of this subtitle.

(3) "Forfeiting authority" means the office or person designated by agreement between the State's Attorney for a county and the chief executive officer of the governing body that has jurisdiction over the assets subject to forfeiture.

(b) *Prohibited.* – During and in relation to a drug trafficking crime, a person may not:

(1) possess a firearm under sufficient circumstances to constitute a nexus to the drug trafficking crime; or

(2) use, wear, carry, or transport a firearm.

(c) *Penalty.* – (1) In addition to the sentence provided for the drug trafficking crime, a person who violates subsection (b) of this section is guilty of a felony and on conviction is subject to:

(i) for a first violation, imprisonment for not less than 5 years and not exceeding 20 years; or

(ii) for each subsequent violation, imprisonment for not less than 10 years and not exceeding 20 years.

(2) (i) The court shall impose a minimum sentence of 5 years under paragraph (1)(i) of this subsection.

(ii) The court shall impose a minimum sentence of 10 years under paragraph (1)(ii) of this subsection.

(3)(i) A court may not suspend any part of a mandatory minimum sentence.

(ii) Except as provided in § 4-305 of the Correctional Services Article, a person sentenced under this subsection is not eligible for parole.

(iii) A sentence imposed under paragraph (1)(ii) of this subsection shall be consecutive to and not concurrent with any other sentence imposed by

virtue of the commission of the drug trafficking crime.

Crim. Law § 5-621.

At the time of sentencing in this case, P.S. § 5-206 provided:

> (a) *In general.* – A person may not possess a rifle or shotgun if the person was previously convicted of:

> (1) a crime of violence; or

> (2) a violation of § 5–602, § 5–603, § 5–604, § 5–605, § 5–612, § 5–613, or § 5–614 of the Criminal Law Article; or

> (3) an offense under the laws of another state or the United States that would constitute one of the crimes listed in item (1) or (2) of this subsection if committed in this State.

> (b) *Penalty.* – A person who violates this section is guilty of a felony and on conviction is subject to imprisonment not exceeding 15 years.

> (c) *Violation is separate crime.* – Each violation of this subsection is a separate crime.

P.S. § 5-206.

Clearly, the offenses do not merge under the required evidence test. "Under federal double jeopardy principles and Maryland merger law, 'the principal test for determining the identity of offenses is the required evidence test.' The required evidence test prohibits separate sentences for each offense if only one offense requires proof of a fact which the other does not." *Christian v. State*, 405 Md. 306, 321 (2008) (quoting *Dixon v. State*, 364 Md. 209, 26-37 (2001)). Each offense in this case includes different elements. For instance, Crim. Law § 5-621 requires the illegal possession of a firearm to be in connection with a

drug trafficking offense.  P.S. § 5-206 requires the illegal possession of a rifle or shotgun to be by a person previously convicted of a disqualifying offense.

Recognizing this, appellant contends the sentences merge under the rule of lenity or the principle of fundamental fairness.  This Court stated the rule of lenity as follows:

> "Even though two offenses do not merge under the required evidence test, there are nevertheless times when the offenses will not be punished separately. Two crimes created by legislative enactment may not be punished separately if the legislature intended for the offenses to be punished by one sentence.  It is when we are uncertain whether the legislature intended one or more than one sentence that we make use of an aid to statutory interpretation known as the 'rule of lenity.'  Under that rule, if we are unsure of the legislative intent in punishing offenses as a single merged crime or as distinct offenses, we, in effect, give the defendant the benefit of the doubt and hold that the crimes do merge."

*Clark v. State*, 188 Md. App. 185, 207-208 (2009) (quoting *Monoker v. State*, 321 Md. 214, 222 (1990)).

The prior version of Crim. Law § 5-621, Article 27 § 281A, a statute that did not prohibit the mere possession of a firearm in connection with a drug trafficking offense, was enacted in 1989 as part of the Drug Kingpin Act.  As the Court of Appeals explained in considering that prior version:

> Its purpose was "to reduce the supply of drugs in Maryland by establishing harsher penalties for drug dealers and by decreasing the profitability of participation in a drug trafficking crime." Floor Report for S.B. 400. That purpose is similar to that attending the passage, in 1971, of the Maryland Controlled Dangerous Substance Act: "to turn the screw of the criminal machinery—detection, prosecution and punishment—tighter and tighter." *Cunningham v. State*, 318 Md. 182, 189 (1989).

*Harris v. State*, 331 Md. 137, 150-51 (1993).

28

The Floor Report for the Senate Bill continues:

> The firearms component of the bill is based on the recognition that firearms are readily available and that those involved in drug trafficking crimes are quite willing to use such weapons to resolve disputes with their rivals or their customers. Testimony indicated that there has over the years been a dramatic increase in the number of drug related homicides especially among innocent victims.

Floor Report, Senate Bill 400, Senate Judicial Proceedings Committee (1989).

P.S. § 5-206 was enacted in 2011 as part of the Restrictions Against Use and Possession of Firearms. 2011 Md. Laws chs. 164, 165. The bill was designed to close loopholes in the Public Safety article to ensure that the penalties applicable to illegal use and possession of handguns also applied equally to those that used or possessed rifles or shotguns:

> This bill brings state law closer to federal law, under 18 U.S.C. Section 922, which prohibits the possession of any firearm or ammunition by a person convicted in any court of a crime punishable by imprisonment for a term exceeding one year.

Fiscal and Policy Note (Revised), Senate Bill 174, Department of Legislative Services.

Much of the Senate Bill concerned expanding the prohibition of the illegal use of handguns to rifles and shotguns. Testimony in support of companion House Bill 241 also acknowledged the need to expand prohibition of illegal possession to these sorts of weapons. For instance:

> We believe this legislation is needed, as part of that broader strategy, to increase the probability that an arrest for illegal gun possession will result in convictions that will take criminals off the street and serve as a deterrent, which is missing today, against future violent crimes.

Testimony in Support of House Bill 241 by Presidents of Johns Hopkins University, University of Maryland, and Morgan State University, House Judiciary Committee (March 8, 2011).

Further, the House Judiciary Committee heard the following:

> Baltimore's efforts to reduce illegal gun possession could yield greater reductions in shootings if offenders convicted of illegal gun possession face stiffer penalties. Last year, 44% of Baltimore's homicide suspects had prior arrests for illegal gun possession. But too many of these offenders spent little time in jail following convictions. Research has shown that the number of prior gun offenses is one of the best predictors for which offenders subsequently murder.
>
> Studies which have examined the effects of sentence enhancements for illegal gun possession on city crime rates have found that these policies tend to lead to reductions in gun violence. When cities combine stiffer sentences for gun crime with focused deterrence of illegal gun possession research has shown even more dramatic reductions in homicide.

Testimony in Support of House Bill 241 by Daniel W. Webster, Professor and Co-Director, Center for Gun Policy and Research, Bloomberg School of Public Health, Johns Hopkins University, House Judiciary Committee (March 8, 2011) (footnotes omitted).

Additionally, there was the following testimony from the Baltimore City Police Commissioner:

> [T]he bill expands the current prohibition against the possession of regulated firearms to include long guns and shotguns by those persons who have previously been convicted of a crime of violence and CDS felony crimes and strengthens the current penalty provision associated with this crime.
>
> * * *
>
> While the bill would have statewide applicability, it will have a

significant impact in Baltimore City. In 2010, the Baltimore Police Department seized 647 long guns which accounted for over 27% of the total firearms recovered. Since 2008, the Department has seized over 2000 long guns and 98 assault weapons. Each year there are incidents, including the crimes of aggravated assault and robbery, which are perpetrated with long guns, shotguns, or assault weapons. . . .

. . . Maryland law (PS 5-133 (c)) currently penalizes only the possession of a regulated firearm (handguns and assault weapons) when possessed by prohibited offenders and there is no similar provision in Maryland law if a prohibited person possesses a shotgun or long gun.

* * *

The expansion of the prohibitions proposed in HB 241 to include all firearms and the revisions to the sentencing structure would also support Baltimore's efforts to crack down on illegal guns and gun violence. Maryland has the responsibility to keep all firearms from convicted felons and to impose strong penalties that take into consideration the prior criminal history of these offenders for these violations.

Testimony of Frederick H. Bealefeld, III, Baltimore City Police Commissioner, in Support of House Bill 241, House Judiciary Committee (March 8, 2011) (emphasis omitted).

We have found nothing in the legislative history suggesting that the General Assembly meant for these two offenses, Crim. Law § 5-621, and P.S. § 5-206, to merge under the rule of lenity. Both laws were enacted to expand criminal culpability for the illegal possession of firearms under their respective circumstances. As the Court of Appeals has stated, "it is most unlikely that the General Assembly would promulgate, on the one hand, a statutory scheme designed, in part, to increase sentences, while, on the other hand, and at the same time, intending that the doctrine of merger would apply and, thereby, reduce the total sentences." *Pye v. State*, 397 Md. 626, 637 (2007). Indeed, the sentencing structure

31

of both offenses are distinct, as Crim. Law § 5-621 calls for mandatory minimum sentences while P.S. § 5-206 provides for up to 15 years and specifically mandates that each violation of that subsection is a separate crime.

Moreover, as argued by the State, *Johnson v. State*, 154 Md. App. 286 (2003), is instructive. There, this Court declined to merge sentences for use of a firearm in relation to drug trafficking and the unlawful wearing, carrying, or transporting of a handgun, under either the required evidence test or as a result of legislative intent. *Johnson*, 154 Md. App. at 311. Indeed, what this Court stated in regards to the handgun offense at issue in *Johnson* applies equally here to the illegal possession of a rifle offense:

> The rule of lenity, however, applies only when criminal statutes are ambiguous. There is no ambiguity in these statutes. The Legislature's concern about the use and possession of handguns, and its additional concern about the aggravating circumstance of weapons being used by persons transacting in drugs, is apparent. Because we are persuaded that the Legislature intended to authorize the imposition of a separate punishment for each of the offenses at issue, Judge Hennegan did not err or abuse his discretion when he refused to merge appellant's "unlawful wearing" and "use" convictions for purposes of sentencing.

*Id*. at 312.

Nor are we persuaded that the sentences merge under principles of fundamental fairness. Indeed, we question whether this argument was properly presented to us considering that, other than a brief citation to the doctrine, appellant has not adequately briefed the issue. *See Bert v. Comptroller of the Treasury*, 215 Md. App. 244, 269 n. 15 (2013) ("Appellant's 'argument' could also be rejected out of hand because it is inadequately

32

briefed").

In any event, were we to consider the doctrine, the Court of Appeals has explained

that

> [i]n deciding whether fundamental fairness requires merger, we have looked
> to whether the two crimes are "part and parcel" of one another, such that one
> crime is "an integral component" of the other. *Monoker*, 321 Md. at 22. This
> inquiry is "fact-driven" because it depends on considering the circumstances
> surrounding a defendant's convictions, not solely the mere elements of the
> crimes. *Pair v. State*, 202 Md. App. 617, 645 (2011).[]

*Carroll v. State*, 428 Md. 679, 694-95 (2012) (internal parallel citations omitted). Illegal

possession of a rifle by a person previously convicted of a disqualifying offense is not "part

and parcel" of a case of illegal possession of a firearm under sufficient circumstances to

constitute a nexus to a drug trafficking crime. One could be convicted under either statute

standing alone. And, under the circumstances of this case, including, but not limited to the

presence of appellant's two-year-old child in an apartment containing drugs and a loaded

rifle, we are not persuaded that it was fundamentally unfair to separately sentence appellant

in this case.

**THE CONVICTION ON COUNT 5, POSSESSION OF BZP, REVERSED. THE SENTENCE FOR THE CONVICTION ON COUNT 6, POSSESSION OF MARIJUANA, VACATED AND REMANDED FOR RESENTENCING. JUDGMENTS OTHERWISE AFFIRMED. COSTS TO BE ASSESSED 3/5 TO APPELLANT AND 2/5 TO FREDERICK COUNTY.**